FRANKFURT KURNIT KLEIN & SELZ, P.C.
Craig B. Whitney
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
*Attorneys for Casper Sleep, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

CASPER SLEEP, INC.,                                  :

                              : Case No. 16-cv-3223 (CM) (AJP)

         Plaintiff,                                  :

                              : **FIRST AMENDED COMPLAINT**

    -against-                                  :

                              : **JURY DEMAND**

DEREK HALES and HALESOPOLIS LLC,       :

                              :

         Defendants.                                  :

                              :

------------------------------------------------------------X

Plaintiff Casper Sleep, Inc. ("Plaintiff" or "Casper"), by its attorneys, Frankfurt Kurnit Klein & Selz, PC, for its First Amended Complaint (the "Complaint") against defendants Derek Hales and Halesopolis LLC (collectively, "Defendants" or "Hales") alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action arising from Defendants' false advertising and deceptive acts and practices under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Section 349 of the New York General Business Law.

2.      In early 2014, Casper launched as an innovative new sleep start-up, radically disrupting the traditional mattress industry with one mattress sold directly to consumers online with a risk free in-home trial—eliminating mattress stores and their inflated prices.  Casper's unique approach sought to create a universally comfortable product with a sleek design delivered straight to your door without the need for commission-driven salespeople working in retail

stores.  Instead, Casper offers its mattresses directly to consumers via its e-commerce website.  Casper immediately struck a chord with consumers, generating $1 million in sales within its first month.

3.      Casper's award-winning and patent-pending mattress design was the result of significant research and development.  In creating "one perfect mattress" for consumers, Casper tested more than 100 support foam samples, created more than 100 prototypes and conducted more than 3,200 hours of rigorous product testing.  Collectively, Casper's best-in-class product design team has won numerous awards and holds more than 50 patents.

4.      Casper's success has spawned numerous "imitators" that duplicate Casper's innovative approach without investing in any of the innovations that led to Casper.  TechCrunch, a leading media publication, recently noted that since Casper launched in April 2014, "[t]he past two years have also seen a boom in mattress startups . . . Casper does seem to have started a trend."  As competition in online mattress sales has increased, so has demand for independent, unbiased reviews of the many direct-to-consumer mattresses that are now available.  Because consumers rely on these reviews in lieu of testing the mattresses themselves prior to purchase, the honesty and integrity of the reviews and reviewers are essential to avoid consumer deception.

5.      Through his website, "Sleepopolis," Hales holds himself out as an independent and unbiased mattress reviewer.  In reality, however, Hales collects sales commissions from Casper's competitors, whose products Hales reviews.  Hales's reviews steer Sleepopolis readers toward products from whose makers Hales receives these benefits, and away from products—such as Casper mattresses—from whose makers Hales receives nothing.  In this way, Hales is part of a surreptitious economy of affiliate scam operators who have become the online versions of the same commission-hungry mattress salesmen that online mattress shoppers have sought to avoid.

6.      Consumers are entitled—and indeed, are required—to be informed about Hales's material connections to Casper's competitors so that they may weigh the value Hales's endorsements.  But Hales's reviews are devoid of any conspicuous disclosures notifying consumers of these practices.

7.      Casper—and the consumer—has suffered considerable injury as a result of Hales's undisclosed connections to Casper's competitors.  By falsely conveying that his reviews are independent and unbiased, Hales has damaged Casper's reputation, distorted the consumer marketplace, and deprived Casper of significant revenue due to lost sales.

**JURISDICTION AND VENUE**

8.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 because it arises under the Lanham Act, 15 U.S.C. § 1051 *et seq.*  This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum of $75,000 and is between citizens of different states. This Court has supplemental jurisdiction over Casper's state law claim pursuant to 28 U.S.C. § 1367(a) because it is so related to Casper's Lanham Act claim that it forms part of the same case or controversy.

9.      This Court has personal jurisdiction over Defendant pursuant to CPLR § 302(a)(3) because Hales's tortious acts have caused injury to Casper within New York, and Hales has otherwise committed acts giving rise to personal jurisdiction under CPLR § 302(a)(3)(i)-(ii).

10.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in the Southern District of New York.

3

**PARTIES**

11.    Plaintiff Casper is an e-commerce company that sells mattresses and other sleep products.  Casper is incorporated in Delaware, with its principal place of business at 45 Bond Street, New York, New York.

12.    Upon information and belief, defendant Derek Hales is the proprietor of http://www.sleepopolis.com ("Sleepopolis"), a website that features his reviews of mattresses, pillows, bedding, and other sleep products.  Upon information and belief, Hales resides in Arizona.

13.    Upon information and belief, defendant Halesopolis LLC is an Arizona limited liability company of which Derek Hales is the sole member and manager. Upon information and belief, Halesopolis LLC has its principal place of business in Phoenix, Arizona.  Upon information and belief, Derek Hales uses Halesopolis as a vehicle to operate Sleepopolis.

**FACTUAL ALLEGATIONS**

*Casper's Early Success*

14.    Casper launched in 2014 with a single, state-of-the-art foam mattress product, sold directly to consumers through a simple online interface on http://www.casper.com.  Once purchased, a Casper mattress is compressed and shipped in a box the size of a mini-fridge and small enough to fit in the trunk of a car or be delivered by a bicycle messenger.

15.    Casper also has a free, no-hassle return policy: a mattress purchaser has a 100-day trial period, at any point during which he or she may return the mattress for a full refund.  Once notified of the return, Casper arranges for a courier to pick up the mattress for donation or recycling.

16.    Casper's business model eliminates the deceptive sales tactics and inflated, commission-driven prices commonly found in mattress retail stores.  Removing this middleman

has contributed to Casper's success: the company earned over $100 million in revenue during its first calendar year and has attracted nearly $70 million in investment. *Fast Company* has named Casper one of its Most Innovative Companies in the World and *TIME* crowned the Casper mattress one of the Best Inventions of 2015.

17.    Casper's ascent has also inspired competitors. Since Casper pioneered the digital mattress marketplace, dozens of online mattress retail start-ups have followed suit, selling mattresses on their own websites and on third-party platforms such as Amazon.

### *The Rise and Regulation of Affiliate Marketing*

18.    In the wake of Casper's success and disruption of the traditional retail model, consumers can now purchase a wide variety of competing mattresses without ever stepping foot in a mattress store. As a result, online reviews have become an increasingly prominent part of the online mattress marketplace: consumers seek out and rely on these reviews to compare competitors and make purchasing decisions.

19.    The important role of reviewers—on their review websites and on social media platforms—is pervasive across the online retail industry. As the power of reviewers to influence purchase decisions has grown, retailers have partnered with reviewers to make reviewing products a profitable business in itself.

20.    One way that retailers help reviewers monetize their reviews is through "affiliate marketing," whereby the retailer rewards the reviewer or other "affiliate" for each purchase or website visit that the affiliate secures.

21.    The use of "affiliate links" and "coupon codes" is a common form of affiliate marketing. An affiliate link is a unique URL leading to a retailer's website that contains an identifier associated with the affiliate. When a customer arrives at the retailer's website by

clicking on this URL link, any resulting purchases are tracked and the affiliate receives a commission on each purchase.

22.     Coupon codes have the same function as affiliate links, but work slightly differently.  Rather than a unique URL, an affiliate is provided with a unique code that consumers may enter at the time of an online purchase, often to receive a discounted price or other benefit.  When a consumer enters the code, the sale is attributed to the affiliate, who receives a commission.

23.     Affiliate marketing and related practices create relationships between reviewers and retailers that consumers would not reasonably expect.  As a result, regulators of commerce, most notably the Federal Trade Commission (FTC), have made clear that these practices are unfair and deceptive if they are not effectively and conspicuously disclosed.

24.     In 2009, the FTC issued its Guides Concerning the Use of Endorsements and Testimonials in Advertising (the "Endorsement Guides"), using its authority under Section 5 of the Federal Trade Commission Act (the "FTC Act") to regulate unfair or deceptive acts or practices in or affecting commerce.  15 U.S.C. § 45; *see* 16 C.F.R. § 255.

25.     The Endorsement Guides specifically provide that "*[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed.*"  16 C.F.R. § 255.5 (emphasis added).

26.     In May 2015, the FTC released a set of answers to frequently asked questions regarding the Endorsement Guides (the "Endorsement Guide FAQs," *available at* https://www.ftc.gov/tips-advice/business-center/guidance/ftcs-endorsement-guides-what-people-are-asking and attached as Ex. A).

27.     The Endorsement Guide FAQs contain an entire section devoted to affiliate marketing. *See id.* at 18-19. The section states that, for an affiliate disclosure to be "clear and conspicuous," the reader should be able to "see both the review containing that disclosure and the link at the same time." *Id*. It warns that "if the product review containing the disclosure and the link are separated, readers may lose the connection." *Id*. It also makes clear that "[p]utting disclosures in obscure places—for example, buried on an ABOUT US or GENERAL INFO page . . .—*isn't good enough*." *Id*. The Endorsement Guide FAQs further state that "[a] single disclosure on your home page" is inadequate "because people visiting your site might read individual reviews or watch individual videos without seeing the disclosure on your home page." *Id.* at 11.

28.     The FTC's guidance regarding affiliate marketing and related practices reflects the fundamental legal principle that commercial speech must be true and non-misleading. As applied to business relationships between retailers and reviewers, this means that reviewers must clearly and conspicuously disclose any material connections to retailers that they have. Hales has utterly failed to do so, and has caused Casper significant damage as a result.

### *Hales's Reviews are False and Misleading*

29.     Hales promotes Sleepopolis as a source for personally informed, independent, and unbiased mattress reviews. Among other express affirmations of independence, Hales proclaims:

- "All content you find on Sleepopolis is my genuine, honest, and full editorial opinion. My readers trust my recommendations because of this honesty." http://sleepopolis-mattress-reviews.com/disclosures/ (as of April 29, 2016) (Ex. B at 1).

- "No review or content is written, directed, or otherwise influenced by any manufacturer or sleep company." *Id*.

- "As with all product reviews on Sleepopolis, only the highest quality products are featured and only products that I personally believe offer great value to consumers." *Id.*

7

- "All content and reviews you find on Sleepopolis are there because I believe it creates great value, informs, guides, and helps consumers make informed decisions." *Id.*

30.  While Hales and Casper have no affiliate relationship, Hales *does* offer affiliate links or coupon codes for many mattress products offered by Casper's competitors, often in connection with a promised discount.  Attached to this Complaint as Exhibit C is, upon information and belief, a non-exhaustive list of mattress brands for which Hales is an affiliate, including the mattress review URL and the relevant affiliate link or coupon code.

31.  Upon information and belief, Hales receives a commission whenever a consumer uses one of the Sleepopolis coupon codes or affiliate links listed in Exhibit C to purchase a mattress from one of Casper's competitors.

32.  In his reviews of the mattresses listed in Exhibit C, Hales misleadingly implies that his statements are completely independent, unbiased, and informed solely by personal experience, reinforcing his express promises of independence elsewhere on the website.  For example, Hales states:

- "I'm impressed. I'm sleeping as well as I ever have. The Leesa mattress just feels incredible. So much so that a life-long stomach sleeper is able to sleep comfortably on his back and side."  http://www.sleepopolis-mattress-reviews.com/reviews/leesa-mattress-review/ (as of April 29, 2016) (Ex. B at 10).

- "The Purple mattress is one of the most interesting mattresses I have tested to date. The combination of materials provide a feel that I have not experienced anywhere else. " http://www.sleepopolis-mattress-reviews.com/reviews/purple-mattress-review/ (as of April 29, 2016) (Ex. B at 13-14).

- "The Alexander hybrid provides a delightful feel that's comparable to other ultra luxury mattresses. All in all, the unique layers of copper infused memory foam, gel memory foam, and pocketed coils mesh well together for one of the most comfortable mattresses Sleepopolis has tested to date."  http://www.sleepopolis-mattress-reviews.com/reviews/nest-bedding-alexander-hybrid-mattress-review/ (as of April 29, 2016) (Ex. B at 22).

8

- "This mattress if fairly unique in terms of overall feel. . . . Personally, I'm a big fan of the feel of the Novosbed." http://www.sleepopolis-mattress-reviews.com/reviews/novosbed-mattress-review/ (as of April 29, 2016) (Ex. B at 26).

- "Personally, I really enjoyed this feel. It felt as if the [Ghostbed] mattress softened up during my sleep to improve comfort and reduce restlessness." http://www.sleepopolis-mattress-reviews.com/reviews/ghostbed-mattress-review/ (as of April 29, 2016) (Ex. B at 32).

33. As explained in further detail below, because Hales fails to sufficiently disclose his material connections to these mattress retailers, readers of Sleepopolis are unable to consider those connections in weighing the value of Hales's endorsements.

34. By the same token, readers of Sleepopolis are unable to weigh the value of Hales's negative statements regarding Casper, with whom he has no affiliate relationship.

35. For example, Hales has published side-by-side comparisons of the Casper mattress against, among others, the Purple, Helix, Brooklyn Bedding, GhostBed, and Leesa mattresses.

36. Upon information and belief, Hales has affiliate relationships with Purple, Helix, Brooklyn Bedding, GhostBed, and Leesa, as evidenced by the coupon codes offered for those mattress near the top of each of the reviews. *See* Ex. C.

37. Hales, unsurprisingly, declares in each of these comparisons that Casper's competitor—who is compensating Hales—is the better mattress:

- "After sleep testing each mattress, I have come to the conclusion that Purple is the outright better choice. The hyper-elastic polymer top layer in addition to the multiple layers of polyurethane foam simply make a more supportive, cooler, and higher performance mattress than the Casper." http://sleepopolis-mattress-reviews.com/reviews/purple-vs-casper-mattress-review/ (as of April 29, 2016) (Ex. B at 42).

- "After sleep testing both mattresses I felt that the Helix was an overall better mattress in my opinion.  The biggest difference between Casper and Helix is simply the level of customization + the thicker level of comfort layers." http://sleepopolis-mattress-

9

reviews.com/reviews/helix-vs-casper-mattress-review/ (as of April 29, 2016) (Ex. B at 48-49).

- "After careful review and months of testing these two mattresses, I believe Brooklyn Bedding is simply the better mattress. Brooklyn Bedding's design, performance, materials, and price point simply knock it out of the park in a side-by-side comparison." http://sleepopolis-mattress-reviews.com/reviews/brooklyn-bedding-vs-casper-mattress-review/ (as of April 29, 2016) (Ex. B at 55).

- "I have come to the conclusion that GhostBed is simply the better choice. GhostBed's added comfort layers, great support, and overall well rounded performance crushes Casper in a side-by-side comparison." http://sleepopolis-mattress-reviews.com/reviews/ghostbed-vs-casper-mattress-review/ (as of April 29, 2016) (Ex. B at 62).

- "I believe the Leesa to be the better mattress. . . . I don't know what 'it' is, but Leesa definitely has it.  It's hard to describe the balanced feeling of softness and support you get with the Leesa.  I personally love the Leesa mattress." http://sleepopolis-mattress-reviews.com/reviews/casper-vs-leesa-mattress-review/ (as of April 29, 2016) (Ex. B at 68).

38.     Hales's direction of Sleepopolis readers away from Casper and towards mattress brands with whom he has an affiliate relationship is not limited to these comparisons.  In his review of the Casper mattress, Hales states, "**I do not recommend the Casper mattress**" (http://sleepopolis-mattress-reviews.com/reviews/casper-mattress-review/ (as of April 29, 2016) (Ex. B at 74) (emphasis in original)), and that "Leesa, Brooklyn Bedding, Love Bed, GhostBed, and Helix all offer improved performance at a better value compared to the Casper." *Id.*

39.     At the very top of Hales's Casper review is a highlighted box of text with the following message: "**Thinking about buying a Casper?** Do your homework! Check out these 4 mattresses companies that Sleepopolis loves." *Id.* at 70 (emphasis in original).  The message links to a page devoted to promoting four "Casper alternatives," which includes coupon codes for three of them.  *See* http://sleepopolis-mattress-reviews.com/blog/4-online-mattress-companies-you-should-see-before-you-buy/ (as of April 29, 2016) (Ex. B at 76-79).

10

40.     Tellingly, Hales's Casper review was not always negative, a fact that further demonstrates his pay-to-play tactics.  Between November 2014 and July 2015, Casper and Hales had an affiliate relationship and Casper provided Hales with affiliate links.  Both before and during Hales's time as a Casper affiliate, he praised the Casper mattress, stating that he was "quite happy with [his] Casper mattress," that "it really is hard to go wrong with a Casper," that "[t]he Casper is just an all-around solid mattress," and that "it's hard to come up with a reason to not at least give the Casper a try."  But shortly after Casper ended its affiliate relationship with Hales (and all other affiliate scam operators) in July 2015, Hales downgraded his rating of the Casper mattress, converted his praise to criticism, and began to use the Casper review page as a platform to promote his remaining affiliates.  Though Hales claims in his updated Casper review that "a lot has changed since [he] first tested Casper," the Casper mattress itself has not materially changed during the relevant time period—only Hales's business relationships have.

41.     Hales's mattress brand affiliates have enabled and amplified his deceptive practices.  In March 31, 2016, Marketing Sherpa, a marketing research firm, published an article profiling Leesa's affiliate marketing strategy, using Sleepopolis as a case study.  *See* "Inbound Marketing: How influencer marketing attracted 100,000 website clicks to luxury mattress site," *available at* http://www.marketingsherpa.com/article/case-study/how-influencer-marketing-attracted-website-clicks (attached as Ex. D).  In the article, underneath a screenshot of a Sleepopolis review, Leesa's head of marketing admitted that he provides "copy points and benefit statements" for Leesa affiliates to parrot in their reviews:  "If it's coming out of our mouth, it's no longer organic.  It needs to come from the influencer's mouth."  *Id.*

42.     The Marketing Sherpa article also highlights Leesa's practice of "sponsoring" reviewers' YouTube videos, which "would feature in the description of videos a statement such as 'For an exclusive $75 off, go to www.leesa.com.'"  *Id.*  Again, Hales served as an example,

11

this time through his Sleepopolis YouTube channel.  *See id.*  The article links to Hales's video "Leesa Mattress Unboxing" (https://www.youtube.com/watch?v=3IvI-BNI7jY, screenshot attached as Ex. E), which contains a "$75 Leesa Promo Code" button in the top-left corner and an affiliate coupon link in its description.  Nowhere in the video or its description does Hales disclose his affiliate relationship with Leesa.  The consumer would instead have to click on a grayed-out "show more" tab and read a vague and misleading disclosure (discussed further below).  Indeed, the Sleepopolis YouTube channel is filled with videos in which Hales offers coupon links and promotional codes without disclosing his affiliate relationship with the relevant mattress retailer.  *See, e.g.*, "Leesa mattress review – 2016 Update" (https://www.youtube.com/watch?v=vlNt8RTSLwE, screenshot attached as Ex. F); "GhostBed Mattress Review" (https://www.youtube.com/watch?v=yLE1AK1TMz0, screenshot attached as Ex. G); "Purple Mattress Review" (https://www.youtube.com/watch?v=PkZz8gcI2Kk, screenshot attached as Ex. H).

43.     Hales also uses Twitter to promote his deceptive reviews.  For example, on February 3, 2016, Hales, via his Twitter account @sleepopolis, tweeted a link to the Sleepopolis webpage titled "GhostBed vs. Casper Mattress Review" (https://twitter.com/sleepopolis/status/694929196632526848) (Ex. I at 1), wherein Hales concludes that "GhostBed is simply the better choice."  *See* http://sleepopolis.com/mattress-reviews/ghostbed-vs-casper-mattress-review/ (as of April 29, 2016) (Ex. B at 62); *see also supra* ¶¶ 35-37.  Hales, however, fails to disclose in tweets or on the Sleepopolis webpage that he has an affiliate relationship with GhostBed.

44.     Hales uses Twitter to directly communicate deceptive recommendations to individual consumers as well.  On February 24, 2016, in response to a tweet from a user asking if

Hales thought the "Novosbed is worth the extra $200-300 over casper/Leesa/Ghostbed," Hales tweeted the following in succession:

> Depends on your feel preference.  Novosbed has a pronounced hug / sinkage, more so than these others.  If you want that . . .

> feel then it's worth the extra cost.  If not, Leesa or GB or would be great options. **Don't buy Casper though, it's not worth [it]**

*See* https://twitter.com/sleepopolis/status/702585471092666368 and

https://twitter.com/sleepopolis/status/702585614525333505 (emphasis added) (Ex. I at 2).

Despite the FTC's guidance that affiliate relationships within tweets must be disclosed (*see* Ex.

A at 12), Hales discloses nothing about his affiliate relationships with Leesa and GhostBed in his

tweets.

45.    Casper's competitors make the most of Hales's deceptive reviews, promoting

them through their own social media accounts.  On March 23, 2016, for example, a Twitter user

tweeted, "#caspermattress VS #leesamattress? Please HELP!" *See*

https://twitter.com/leesasleep/status/712752481298583552 (as of Apr. 29, 2016).  Through its

Twitter account, Leesa broadcasted the following response to its nearly 8,500 followers:

> Check out http://sleepopolis.com or search leesa vs. casper and you should find your answer ;) Hit us up w/ any Qs! #leesa.

*Id.*  This response falsely implies to the consumer, who is seeking unbiased feedback on whether

to buy a Casper mattress or a competitor's, that Hales and Sleepopolis are a source of such

unbiased guidance.  The consumer is being scammed by Hales and its affiliates into buying a

competing mattress, to Hales's financial benefit and to Casper's and the consumer's detriment.

46.    In sum, through his explicit and implicit representations, Hales misleads

consumers to believe that Sleepopolis reviews are independent and unbiased, when in fact they

are intended to sell mattresses made by Hales's affiliates.

*__Hales's Disclosures are Inadequate__*

47.    In order to learn of Hales's affiliate relationships with Casper's competitors, a reader of his reviews would have to hunt for one of two types of disclosures hidden on the Sleepopolis website.

48.    First, a reader could scroll to the very bottom of the right-hand sidebar of review pages, where he or she would find a section entitled "Referrals & Honest Reviews," touting Hales's purported independence even as it discloses his material connections to mattress retailers (without disclosing that he only has connections with *certain* retailers—the ones that he most aggressively promotes and rates more highly that non-compensating companies):

> All reviews you find on Sleepopolis are genuine, honest, and based on my personal views of the product.  If you use one of my links and purchase a mattress or other product you should know that the respective companies pay me a small referral fee.  These referral bonuses help me continue to create great content and pay for other expenses associated with the site.  Most of the products reviewed were given to me by the manufacturer.  Visit my full disclosures page for more information.

*See, e.g.*, http://sleepopolis-mattress-reviews.com/reviews/leesa-mattress-review/ (as of April 29, 2016) (ex. B at 8).

49.    Second, a reader could visit Sleepopolis's disclosures page (the "Disclosures Page"), which is accessible either through a link in the buried sidebar disclosures or through a link at the very bottom of the Sleepopolis "footer." http://sleepopolis-mattress-reviews.com/disclosures/ (as of April 29, 2016) (Ex. B at 1-5).

50.    In a section of the Disclosures Page entitled "Commitment to Integrity & Honesty," Hales provides the following statements:

1.    No review or content is written, directed, or otherwise influenced by any manufacturer or sleep company.

2.    No review or content is paid for by any manufacturer or sleep company.

3.    All content on Sleepopolis is 100% my own opinions and thoughts.

4. Sleepopolis does not have any paid advertisements. Any links, images, or promo codes you find on-site are there because they provide great value for my readers.

5. No member of Sleepopolis is employed by any mattress or sleep company

Following these repeated affirmations of Hales's independence, Hales states:

6. Many links on Sleepopolis are "affiliate links" (see below).  If you click one of these links and purchase a mattress Sleepopolis will receive a small monetary commission. These links do not cost you a penny more. These referral commissions help to pay for the expenses associated with Sleepopolis (mattress storage space, video equipment, photography equipment, web hosting, servers, advertising, etc.)

http://www.sleepopolis-mattress-reviews.com/disclosures/ (as of April 29, 2016) (Ex. B

at 1).  Again, no mention is made regarding *which* links are "affiliate links."

51. In the "Affiliate Links" section of the Disclosures page, Hales states,

Some of the links found on Sleepopolis are "affiliate links".  This means that if you click on a link and purchase a product Sleepopolis will receive a monetary commission.  When you purchase a product through one of these links it does not cost you a cent more than if you were to go directly through the manufacturer's link.  These "affiliate links" simply track the origin of the referral sale.

Hales follows up these misleading statements with a blatantly false one:

***All companies pay Sleepopolis nearly the same amount per referral*** and no company receives preferential treatment because of these referrals.  *Id.*

52. None of these attempted "disclosures" cure the deception caused by Hales's

reviews.

53. Even if the substance of the disclosures were sufficient (they are not), the

placement of the disclosures are far from clear and conspicuous.  As the FTC has recognized,

"[d]isclosures should **not** be hidden . . . in blocks of text people are not likely to read" or in other

"hard to find places," and disclosures are not clear and conspicuous if "other elements in the ad

or message obscure or distract from [them]."  Ex. A at 12 (emphasis in original on website).

15

Hales's sidebar disclosures are prime examples of the kind that the FTC rejects.  They are far from the coupon codes and affiliate links to which they relate, in sections of the webpages that visitors are likely to ignore.  Indeed, when the review webpages are viewed on a smartphone or in a small window on a desktop browser, the disclosures are at the very bottom of the webpage.

54.    Moreover, the sidebar disclosures are so general as to be uninformative or even misleading in their own right.  The disclosures fail to identify any specific affiliate relationships, stating that "[i]f you use one my links and purchase a mattress . . . the respective companies pay me a small referral fee."  *See* http://sleepopolis-mattress-reviews.com/reviews/casper-vs-leesa-mattress-review/ (as of April 29, 2016) (Ex. B at 66).  Not only do these "disclosures" leave readers without any knowledge of the actual links and products to which this disclosure applies, they also falsely imply that Hales receives a commission for *all* mattresses he reviews and therefore that his reviews remain unbiased despite these connections.

55.    The disclosures on the Disclosures Page are also completely inadequate.  They are entirely removed from the coupons and links to which they relate: indeed, they are cordoned off to separate webpages.  As the FTC has recognized, such disclosures "[don't] really do it because people visiting your site might read individual reviews . . . without seeing the disclosure."  Ex. A at 11.

56.    A simple Google search makes clear that a Sleepopolis reader would likely never encounter the disclosures on the Disclosures Page.  For example, a direct link to Sleepopolis's side-by-side comparison of Casper and Leesa mattresses (*not* Sleepopolis's Disclosures Page) appears as the first non-sponsored link in Google's search results for "Casper vs Leesa."  *See* Google Search results for "Casper vs Leesa," attached hereto as Ex. J.  And a direct link to Sleepopolis's side-by-side comparison of Casper and GhostBed appears on the first page of

16

Google search results for "Casper vs GhostBed."  *See* Google Search results for "Casper vs GhostBed," attached hereto as Ex. K.

57.     Even on the rare occasion that a reader arrives at the Disclosures Page on his or her way to or from an individual Sleepopolis review, the disclosures he or she would encounter are vague and misleading in themselves, as they fail to identify any specific relationships and falsely imply equivalent relationships between Sleepopolis and *all* reviewed mattress brands, including Casper.

58.     Subsequent to the filing of the original complaint on April 29, 2016 (and possibly in response), Hales added disclosures to the top of his individual and comparison reviews and modified the Disclosures Page, now titled "How Sleepopolis Works."  *See* http://sleepopolis.com/how-sleepopolis-works/ (as of June 10, 2016).  Even these recent attempts at fixing his woefully inadequate disclosures continue to deceive and mislead Sleepopolis readers.

59.     For example, the updated disclosure on the Casper vs. Leesa Mattress Review states: "Sleepopolis is supported by readers.  *Some* links *may* be referral links.  If you use one of these and buy something Sleeopolis [sic] makes a little bit of money."  *See* http://sleepopolis.com/mattress-reviews/casper-vs-leesa-mattress-review/ (as of June 10, 2016)(emphasis added).  First, Sleepopolis is not supported by readers.  Upon information and belief, it is supported by affiliates that pay Hales when he convinces a reader to buy one of their products.  Second, by stating that "some" links "may" be referral links, but failing to specify that Hales has a material connection with Leesa, but not Casper, Hales implies that his relationships to Leesa and Casper "may" be equivalent when they are not.  This vague disclosure, added after the filing of the original complaint, remains inadequate.

60.    In short, in the unlikely event that a Sleepopolis reader encounters Hales's limited disclosures of his affiliate relationships, the disclosures fail to inform the reader of Hales's material connections to Casper's competitors.

### *Casper's Damages*

61.    Hales's deceptive and misleading reviews have caused Casper significant lost sales and reputational damages.  The reviews have also, upon information and belief, resulted in sizable financial gains for Hales.

62.    As discussed, Casper's innovations led to early success and strong brand recognition.  Hales is exploiting the goodwill and notoriety of the Casper brand to increase traffic to his website and promote Casper's competitors, thereby increasing his commissions.

63.    Hales's reviews feature prominently in Google search results for Casper mattress.  A Google search for "Casper mattress," for example, yields Sleepopolis's Casper review on the very first page.  *See* Ex. L.  Hales thereby directly interferes with potential Casper mattress sales, interposing his own false statements and misleading reviews.

64.    Upon information and belief, potential Casper mattress purchasers, including potential purchasers located in New York, have been diverted to Hales's false and misleading Sleepopolis reviews through Casper-related internet searches.  As a result of being deceived into believing in Hales's independence and non-bias, these consumers have purchased mattresses from Casper's competitors rather than Casper.

65.    Casper estimates that Sleepopolis's conduct has caused it millions of dollars in lost sales to date, in addition to significant reputational harm.  Additionally, upon information and belief, Hales has received significant income from commissions on these misdirected sales.

66.    The harm to Casper's business and reputation caused by Hales's conduct is ongoing and continues to this day.

## FIRST CAUSE OF ACTION
### (Violation of Section 43(a) of the Lanham Act – 15 U.S.C. § 1125(a))

67.     Casper incorporates Paragraphs 1 through 66 as if fully set forth herein.

68.     As set forth above, Hales has made false and/or misleading statements on the Sleepopolis website, on YouTube, and in other social media, expressly and implicitly conveying that Hales's mattress reviews are independent and unbiased.

69.     Hales's false and/or misleading statements have the capacity to deceive a substantial portion of Sleepopolis's intended audience of potential mattresses purchasers and, upon information and belief, these statements have actually deceived potential mattress purchasers.

70.     Hales's false and/or misleading statements are material, in that they are likely to influence consumers' mattress purchasing decisions.

71.     By publishing his false and misleading statements on the Sleepopolis website, on YouTube, and elsewhere on the Internet, Hales has placed the statement in interstate commerce.

72.     Casper has suffered injury as a result of Hales's false and misleading statements, both by direct diversion of potential Casper sales and by a lessening of goodwill associated with Casper's products, in an amount to be determined at trial.

73.     Additionally, Hales has received revenue in the form of commissions from affiliate sales caused by his false and misleading statements, in an amount to be determined at trial.

74.     Casper continues to be damaged by Hales's activities and conduct.  Unless Hales's conduct is enjoined, Casper and its goodwill and reputation will suffer irreparable injury that cannot be adequately calculated or compensated solely by money damages and for which there is no adequate remedy at law.

19

## SECOND CAUSE OF ACTION
### (Violation of Section 349 of the New York General Business Law)

75.     Casper incorporates Paragraphs 1 through 74 as if fully set forth herein.

76.     As set forth above, Hales has made false and/or misleading statements on the Sleepopolis website, on YouTube, and in other social media, expressly and implicitly conveying that Hales's mattress reviews are independent and unbiased.

77.     Hales has failed to sufficiently disclose his affiliate relationships with the makers of certain mattresses he reviews, information that Hales alone possesses but fails to provide.

78.     Hales's deceptive acts are directed at consumers because Hales incorporates them into webpages published on Sleepopolis, which features consumer-oriented reviews of mattresses and other sleep products, and on YouTube and Twitter, immensely popular consumer-oriented content platforms.

79.     Hales's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances.

80.     Hales's deceptive acts affect the public interest in New York because, upon information and belief, consumers located in New York have purchased mattresses from Casper's competitors on the basis of Hales's false and/or misleading statements and omissions.

81.     Casper has suffered injury as a result of Hales's false and misleading statements and omissions, both by direct diversion of potential Casper sales and by a lessening of goodwill associated with Casper's products, in an amount to be determined at trial.

82.     Additionally, Hales has received revenue in the form of commissions from affiliate sales caused by his false and misleading statements, in an amount to be determined at trial.

20

83.     Casper continues to be damaged by Hales's activities and conduct.  Unless Hales's conduct is enjoined, Casper and its goodwill and reputation will suffer irreparable injury that cannot be adequately calculated or compensated solely by money damages and for which there is no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

(a)     Finding Defendants have violated Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) and Section 349 of the New York General Business Law;

(b)     Awarding damages in an amount to be determined at trial;

(c)     Permanently enjoining Defendants, their agents, servants, affiliates, employees, attorneys and representatives and all those in privity or acting in concert with them and each and all of them, requiring them:

> (i) to comply fully with all applicable law, rules, regulations, and Federal Trade Commission ("FTC") guidance concerning any material published, exhibited, or otherwise used publicly by either Defendant, including without limitation, the FTC's Guides Concerning Use of Endorsements and Testimonials in Advertising and the FTC's Enforcement Policy Statement on Deceptively Formatted Advertisements; and

> (ii) to disclose clearly and conspicuously any material connections between any manufacturer, distributor, retailer, or marketer of mattresses and either Defendant in any and all material published, exhibited, or otherwise used publicly, including without limitation, on (i) Sleepopolis and/or any other website owned or controlled by either Defendant; (ii) social media accounts owned or controlled by either Defendant, including without limitation, YouTube, Twitter, and Facebook accounts; and/or (iii) any other advertising, promotion, or publicity owned or controlled by either Defendant appearing in any medium;

(d)     Awarding pre-judgment and post-judgment interest, to the fullest extent allowable at law or in equity, on all damages;

(e)     Awarding costs and disbursements of this action, including attorneys' fees; and

(f)     Granting such other and further relief as this Court deems just and proper.

21

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure,

a trial by jury in this action.

Dated: New York, New York
       June 10, 2016

FRANKFURT KURNIT KLEIN & SELZ, P.C.

By:___/s/ Craig B. Whitney_____
       Craig B. Whitney

LiJia Gong (admitted *pro hac vice*)
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
cwhitney@fkks.com
lgong@fkks.com

*Attorneys for Plaintiff Casper Sleep, Inc.*

22