**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X

CASPER SLEEP, INC.,⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:⠀⠀Case No. 16-cv-03223-CM

⠀⠀⠀⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀-against-⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

DEREK HALES and HALESPOLIS LLC,⠀⠀⠀:

⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀:

⠀⠀⠀⠀⠀Defendants.⠀⠀⠀⠀⠀⠀:

-------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Craig B. Whitney, Esq.
LiJia Gong, Esq. (admitted *pro hac vice*)
488 Madison Avenue
New York, NY 10022
Tel.: (212) 980-0120
Fax: (212) 593-9175
cwhitney@fkks.com
lgong@fkks.com

*Attorneys for Plaintiff Casper Sleep, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .............................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT FACTS FROM THE AMENDED COMPLAINT........................................ 3

ARGUMENT....................................................................................................................... 8

I.    CASPER HAS SUFFICIENTLY ALLEGED A LANHAM ACT CLAIM...................... 8

    A.    Hales's Reviews Constitute Commercial Advertising or Promotion ..................... 9

    B.    The Amended Complaint Alleges Actionable False and Misleading Statements  12

        1.    Defendants' Statements Are Not "Mere Opinion" .................................... 14

        2.    Defendants' Material Omissions Are Actionable ..................................... 16

    C.    The FTC Act Does Not Preclude Casper's Lanham Act Claim ........................... 17

    D.    The Amended Complaint Alleges that Hales's False and Misleading Statements
        Affected Consumers' Purchasing Decisions......................................................... 19

    E.    Casper Has Adequately Pled That Its Injuries Were Proximately Caused By
        Defendants ............................................................................................................ 21

II.   CASPER HAS SUFFICIENTLY ALLEGED A CLAIM UNDER SECTION 349 OF
    THE NEW YORK GENERAL BUSINESS LAW......................................................... 23

CONCLUSION.................................................................................................................. 25

FKKS: 741274

24669.302

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Bullion, Inc. v. Regal Assets, LLC,*
No. CV 14-01873 DDP ASX, 2014 WL 6453783 (C.D. Cal. Nov. 17, 2014)....................9, 12

*Am. Home Prods. Corp. v. Johnson & Johnson,*
577 F.2d 160 (2d Cir. 1978)..............................................................................................16

*B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.,*
168 F.3d 967 (7th Cir. 1999) ............................................................................................17

*Conopco Inc. v. Wells Enters., Inc.,*
No. 14 Civ. 2223 (NRB), 2015 WL 2330115 (S.D.N.Y. May 14, 2015)................................20

*Conte v. Newsday, Inc.,*
No. 06-CV-4859, 2013 WL 978711 (E.D.N.Y. Mar. 13, 2013)..............................................22

*Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC,*
16 Civ. 57, 2016 WL 3773394 (S.D.N.Y. July 8, 2016) ............................................2, 9, 10, 11

*Gifford v. U.S. Green Bldg. Council,*
No. 10 CIV. 7747 LBS, 2011 WL 4343815 (S.D.N.Y. Aug. 16, 2011)..................................23

*Gillette Co. v. Norelco Consumer Prods. Co.,*
946 F. Supp. 115 (D. Mass. 1996) ....................................................................................16

*Gmurzynska v. Hutton,*
355 F.3d 206 (2d Cir. 2004)..............................................................................................10

*Groden v. Random House, Inc.,*
61 F.3d 1045 (2d Cir. 1995)..............................................................................................13

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.,*
No. 1:16-cv-592 (JCC/MSN), 2016 WL 3348431 (E.D. Va. June 15, 2016)..........................10

*iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.,*
No. C-11-0592 CW, 2011 WL 6291793 (N.D. Cal. Oct. 25, 2011)........................................13

*Koch v. Acker, Merrall & Condit Co.,*
18 N.Y.3d 940 (2012) ......................................................................................................23

*Lexmark Int'l, Inc. v. Static Control Components,*
134 S. Ct. 1377 (2014)................................................................................................10, 21

*Licata & Co. Inc. v. Goldberg,*
    812 F. Supp. 403 (S.D.N.Y. 1993) ..........................................................13

*Lipton v. Nature Co.,*
    71 F.3d 464 (2d Cir. 1995)..................................................................13

*LivePerson, Inc. v. 24/7 Customer, Inc.,*
    83 F. Supp. 3d 501 (S.D.N.Y. 2015).......................................................19

*Manning Int'l Inc. v. Home Shopping Network, Inc.,*
    152 F. Supp. 2d 432 (S.D.N.Y. 2001).....................................................17

*McNeilab, Inc. v. Am. Home Prods. Corp.,*
    848 F.2d 34 (2d Cir. 1988)..................................................................14

*Merck Eprova AG v. Brookstone Pharm., LLC,*
    920 F. Supp. 2d 404 (S.D.N.Y. 2013)................................................19, 20

*Mylan Pharm., Inc. v. Proctor & Gamble Co.,*
    443 F. Supp. 2d 453 (S.D.N.Y. 2006).....................................................19

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.,*
    102 A.D.3d 5 (2d Dep't 2012) .......................................................23, 24, 25

*Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prods. Corp.,*
    850 F.2d 904 (2d Cir. 1988) ................................................................15

*Nat'l Basketball Ass'n v. Motorola, Inc.,*
    105 F.3d 841 (2d Cir. 1997).............................................................14, 21

*Nationwide CATV Auditing Serv., Inc. v. Cablevision Sys. Corp.,*
    No. 12-CV-3648 (SJF), 2013 WL 1911434 (E.D.N.Y. May 7, 2013) ..............20, 21

*Orlander v. Staples, Inc.,*
    802 F.3d 289 (2d Cir. 2015)............................................................23, 24

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank,*
    85 N.Y.2d 20 (1995) .....................................................................23, 24

*POM Wonderful LLC v. Organic Juice USA, Inc.,*
    769 F. Supp. 2d 188 (S.D.N.Y. 2011)......................................................20

*Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC,*
    No. 08cv0442(DLC), 2016 WL 815205 (S.D.N.Y. Feb. 29, 2016) .....................13

*Software AG, Inc. v. Consist Software Sols., Inc.,*
    No. 08 Civ. 389(CM)(FM), 2008 WL 563449 (S.D.N.Y. Feb. 21, 2008).............15

*Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*,
  No. 96 Civ. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. Mar. 24. 1997) ...................................24

*Student Advantage, Inc. v. CollegeClub.com,*
  No. 99 Civ. 8604 (JSR), 1999 WL 1095601 (S.D.N.Y. Dec. 3, 1999) ...................................20

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  497 F.3d 144 (2d Cir. 2007)..................................................................................................12, 16

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
  No. 06 Civ. 14245 (LTS), 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007) .........................13, 18

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,*
  898 F.2d 914 (3d Cir. 1990)........................................................................................................16

*Vidal Sassoon, Inc. v. Bristol-Myers Co.*,
  661 F.2d 272 (2d Cir. 1981).............................................................................................2, 11, 15

*Vitamins Online, Inc. v. Heartwise, Inc.*,
  No. 2:13-CV-982-DAK, 2016 WL 538458 (D. Utah Feb. 9, 2016).............................12, 13, 14

*VRM Prods., LLC v. V2H ApS,*
  No. 2:13-cv-7719-CBM-JEMx, 2016 WL 1177834 (C.D. Cal. Mar. 18, 2016) ......................22

*Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*,
  No. 1:16-cv-119, 2016 WL 3087055 (E.D. Va. May 31, 2016)..............................................22

*Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*,
  516 F. Supp. 2d 270 (S.D.N.Y. 2007)................................................................................13, 18

*Wilson v. Nw. Mut. Ins. Co.*,
  625 F.3d 54 (2d Cir. 2010)........................................................................................................23

**Statutes**

15 U.S.C. § 1125(a) ................................................................................................ *passim*

16 C.F.R. § 255 ...........................................................................................................5, 9, 18

N.Y. Gen. Bus. Law § 349................................................................................................. *passim*

Plaintiff Casper Sleep, Inc. ("Plaintiff" or "Casper") submits this memorandum of law in opposition to the motion to dismiss the Amended Complaint ("Defs.' Mot.") filed by Defendants Derek Hales ("Hales") and Halesopolis LLC (together with Hales, "Defendants").

## PRELIMINARY STATEMENT

Defendants would like the consuming public—and the Court—to believe that Hales is nothing more than a blogger exercising his First Amendment rights and that Casper is a bully trying to silence him. It is precisely this misrepresentation of the facts, however, that forms the basis for Casper's false advertising claims—which Defendants are trying to dismiss before discovery reveals the truth.

Casper sells its brand of mattresses and other sleep products through its e-commerce website. Defendants own and operate the website called Sleepopolis. Sleepopolis contains Defendants' "reviews" of mattresses and other products, including Casper's. The Amended Complaint alleges that Defendants receive substantial commissions from certain mattress brands—including Casper's competitors—as an incentive to influence consumers to buy mattresses from those brands instead of others. Defendants tout those brands as competitively superior to Casper, and are paid handsomely to do so.

Notwithstanding this lucrative marketing relationship, Defendants make several false and misleading statements on Sleepopolis and on social media affirmatively and implicitly portraying themselves as independent and unbiased in their reviews of mattresses—including that no review is "influenced by any manufacturer or sleep company." In reality, Defendants' reviews are designed to steer unsuspecting consumers towards the brands that offer Defendants the greatest financial reward. Indeed, Defendants are explicitly known as "influencers" by the brands that support them. Defendants' deceptive consumer-oriented conduct is a plain violation of Section 43(a) of the Lanham Act and Section 349 of New York General Business Law. Defendants'

motion to dismiss therefore lacks any plausible basis to dismiss Casper's Amended Complaint at the pleading stage.

Defendants' motion is based on several incorrect statements of law and otherwise argues facts and makes assumptions that are improper on a motion to dismiss. *First*, contrary to Defendants' contentions, Defendants are engaging in commercial speech, and this is not the first case where product reviews have been the subject of a false advertising claim. Another court in this District, in fact, recently denied a defendant's motion to dismiss strikingly similar claims that the defendant reviewer's statements were false advertising because they were deceptively intended to divert sales to the plaintiff's competitor, which was paying a commission to the defendant. *See Enigma Software Grp. USA, LLC v. Bleeping Comput. LLC*, 16 Civ. 57, 2016 WL 3773394, at *21-25 (S.D.N.Y. July 8, 2016). As alleged in the Amended Complaint, the type of "affiliate" or "native" advertising engaged in by Defendants is a relatively new form of advertising, but is growing rapidly in popularity in the wake of social media and other inexpensive ways to reach consumers. Although some courts may be unfamiliar with this type of advertising and may face these issues for the first time, that does not make the Lanham Act claims associated with such advertising any less valid. As the Second Circuit has cautioned, "We are . . . reluctant to accord the language of § 43(a) [of the Lanham Act] a cramped construction, lest rapid advances in advertising and marketing methods outpace technical revisions in statutory language and finally defeat the clear purpose of Congress in protecting the consumer." *Vidal Sassoon, Inc. v. Bristol-Myers Co.*, 661 F.2d 272, 277 (2d Cir. 1981).

*Second*, Casper is not attacking the substance of Defendants' opinions as the basis for its claims and has identified numerous actionable false or misleading statements. Defendants are free to express whatever opinions they have—positively or negatively—about Casper or any other mattress brand. But Defendants cannot mislead consumers by communicating to them that

Defendants' mattress reviews are unbiased, while at the same time hiding the fact that certain mattress brands are providing substantial compensation to incentivize Defendants to manipulate consumers into buying those brands by deeming them superior to Casper. Defendants also cannot make unsubstantiated claims that objective qualities of Casper's products are inferior to those of its competitors. But that is precisely what Defendants are doing.

*Third*, Casper is not usurping the role of the Federal Trade Commission ("FTC"); rather, it is alleging that Defendants are making false and misleading statements in commerce in connection with the promotion of mattresses and related products that violate the Lanham Act and New York General Business Law. The fact that the FTC *also* prohibits such misleading advertising only supports Casper's claims—it does not preclude them.

*Fourth*, Casper has adequately pled both the materiality of Defendants' misstatements and the injury to Casper as a result. Defendants' arguments to the contrary—which lack merit in any event—are factual and are not properly adjudicated on a motion to dismiss.

*Fifth*, Casper's claim satisfies the required elements of New York General Business Law Section 349. The deceptive conduct alleged in the Amended Complaint is plainly targeted towards consumers. Defendants' contention that there need be some greater danger or harm to the public for a Section 349 claim is contrary to the requirements set forth by the Second Circuit and the New York State appellate courts, not to mention the plain language of the statute itself.

Accordingly, the claims asserted in the Amended Complaint are sufficiently pled and Defendants' motion should be denied.

## RELEVANT FACTS FROM THE AMENDED COMPLAINT

Casper is an e-commerce company that sells mattresses and other sleep products. Amended Complaint ("AC") ¶ 2. Defendant Hales is the proprietor of

http://www.sleepopolis.com ("Sleepopolis"), a website that features his reviews of mattresses. *Id.* ¶ 12. Hales uses defendant Halesopolis LLC as a vehicle to operate Sleepopolis. *Id.* ¶ 13.

In early 2014, Casper launched as an innovative new sleep start-up, selling mattresses directly to consumers via its e-commerce website. *Id.* ¶ 2. Since then, dozens of online mattress brands have followed suit. *Id.* As a result, online reviews have become an increasingly prominent part of the online mattress marketplace: consumers seek out and rely on these reviews, in lieu of testing the mattresses themselves, to compare brands and make purchasing decisions. *Id.* ¶¶ 4, 18. The important role of reviewers is pervasive across the online retail industry. *Id.* ¶ 19. As the power of reviewers to influence purchase decisions has grown, brands have partnered with reviewers to make reviewing products a profitable business in itself. *Id.*

One recent way that brands help reviewers monetize their reviews and incentivize the reviewers to promote a particular brand is through "affiliate marketing." Affiliate marketing is where the brand rewards the reviewer—or "affiliate"—for each product purchase or website visit that the affiliate secures. *Id.* ¶ 20. The use of "affiliate links" and "coupon codes" is a common form of affiliate marketing. *Id.* ¶ 21. An affiliate link is a unique URL leading to a brand's website. *Id.* When a customer arrives at the brand's website by clicking on this link, any resulting purchases are tracked and the affiliate receives a commission. *Id.* Coupon codes have the same function as affiliate links, but the affiliate is provided with a unique code that consumers may enter at the time of an online purchase, often to receive a discounted price or other benefit while the affiliate receives a commission. *Id.* ¶ 22.

Affiliate marketing creates relationships between brands and reviewers that consumers would not reasonably expect. *Id.* ¶ 23. As a result, regulators of commerce, most notably the FTC, have made clear that these practices are unfair and deceptive if they are not effectively and conspicuously disclosed. *Id.* Specifically, in 2009, the FTC issued its Guides Concerning the

Use of Endorsements and Testimonials in Advertising, published at 16 C.F.R. § 255 (the "Endorsement Guides"). *Id.* ¶ 24. The Endorsement Guides specifically provide that "[w]hen there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (i.e., the connection is not reasonably expected by the audience), such connection must be fully disclosed." *Id.* ¶ 25.

Defendants promote Sleepopolis as a source for personally informed, *independent*, and *unbiased* mattress reviews. *Id.* ¶ 29. Defendants state that "[a]ll content you find on Sleepopolis is my genuine, honest, and full editorial opinion" and that "readers trust [Hales's] recommendations because of this honesty." *Id.* They further state, "No review or content is written, directed or otherwise influenced by any manufacturer or sleep company." *Id.* Defendants' website states that their reviews are aimed at influencing purchasing decisions, albeit for the betterment of the consuming public (rather than for Defendants' financial gain): "All content and reviews you find on Sleepopolis are there because I believe it creates great value, informs, guides, and helps consumers make informed decisions." *Id.*

In reality, Hales is a compensated salesman for many of Casper's competitors. He deliberately promotes certain competitors' mattresses in exchange for receiving a meaningful commission whenever a consumer uses one of his coupon codes or affiliate links.[1] *Id.* ¶ 31; Ex.

---

[1] Defendants argue, contrary to the allegations in the Amended Complaint, that they receive a commission from Amazon.com if a Casper mattress is purchased through Sleepopolis's Amazon links. Defs.' Mot. at 6-7. Defendants improperly ask the Court to take judicial notice of this purported "fact" because Casper has pled in *another case* that a competitor of Sleepopolis receives such commissions (although tellingly the quote included in Defendants' brief deceptively removed the name of the Sleepopolis competitor in an attempt to make it look like the statement would apply to Sleepopolis). Casper's factual allegation regarding a Sleepopolis competitor, however, does not mean that it applies to Sleepopolis—particularly when Casper did not include such allegation in the Amended Complaint here. Further, even if Casper had alleged that Defendants receive a commission for sales through Amazon, Casper would have further alleged, as it did for Sleepopolis's competitor, that any Amazon relationship pales in comparison to the brands with which Defendants have an affiliate relationship, which provides a material

C. One marketing research firm even published an article highlighting how connected Sleepopolis is with Casper's competitor, Leesa. *Id.* ¶ 41. In the article, Sleepopolis is referred to as an "influencer," and underneath a screenshot of a Sleepopolis review, Leesa's head of marketing admitted that he provides "copy points and benefit statements" for Leesa affiliates to parrot in their reviews: "If it's coming out of our mouth, it's no longer organic. It needs to come from the influencer's mouth." *Id.* In other words, Hales's statements on Sleepopolis that his reviews are his "genuine, honest, and full editorial opinion" are false—they are written, for example, by Leesa to sell Leesa mattresses. Defendants mislead consumers to believe that Hales's reviews are completely unbiased and based on personal experience when in fact they are intended to sell mattresses made by Defendants' affiliated brands generally, and certain especially well-paying brands in particular. *Id.* ¶¶ 31-42.

Defendants' pay-to-play tactics are obvious when comparing Hales's reviews of Casper before and after Casper ended its affiliate relationship with Defendants. Both before and during Defendants' time as a Casper affiliate, Hales praised the Casper mattress, stating that he was "quite happy with [his] Casper mattress," that "it really is hard to go wrong with a Casper," that "[t]he Casper is just an all-around solid mattress," and that "it's hard to come up with a reason to not at least give the Casper a try." *Id.* But shortly after Casper ended its affiliate relationship with Defendants, Hales downgraded his rating of Casper, converted his praise to criticism, and began to use the Casper review page as a platform to direct Sleepopolis readers away from Casper and toward mattress brands with which he has an affiliate relationship. *Id.* ¶ 40. In his review of the Casper mattress, for example, Hales now states, "**I do not recommend the Casper mattress,**" and that "Leesa, Brooklyn Bedding, Love Bed, GhostBed, and Helix all offer

---

incentive for Defendants to skew their unsuspecting consumers towards those brands. Such facts, of course, will be appropriately fleshed out in discovery following a motion to dismiss.

improved performance at a better value compared to the Casper." *Id.* ¶ 38 (emphasis in original). Although consumers are led to believe that this reversal is unbiased, they are unaware that it is because these competitors are paying Defendants while Casper is not. *Id.* ¶¶ 30, 33, 34. In addition, Hales has published side-by-side comparisons of the Casper mattress against competitor brands with which he has an affiliate relationship. *Id.* Unsurprisingly, Hales declares in each of these comparisons that Casper's competitor—which is compensating Defendants—is the better mattress. *Id.* ¶ 37.

Defendants' deceptive practices are not limited to the Sleepopolis website, but extend to their Twitter account and YouTube videos as well. *Id.* ¶¶ 42-44. Defendants use social media to promote Casper's competitors as superior to Casper and provide affiliate links and coupon codes to induce their followers to buy the products that they are paid to sell. Of course, nowhere on social media do Defendants disclose these material financial relationships or the truth that these seemingly genuine tweets are really compensated commercial advertising. *Id.*

Casper acknowledges in the Amended Complaint that Defendants make certain general disclosures on the Sleepopolis website (although not on the Sleepopolis Twitter account or on YouTube) regarding their affiliate relationships—most of which did not exist at the time the original complaint was filed—but these disclosures do not cure deception caused by Defendants' misleading statements. Indeed, they actually worsen it. Perhaps most egregious of all, Defendants "disclose" a literal falsehood: ***"All companies pay Sleepopolis nearly the same amount per referral*** and no company receives preferential treatment because of these referrals." *Id.* ¶ 51 (emphasis added). Casper, of course, does not have an affiliate relationship with Sleepopolis and does not pay Defendants any money. Hales also states, "If you use one of my links and purchase a mattress or other product you should know that the respective companies pay me a small referral fee. These referral bonuses help me continue to create great content and

pay for other expenses associated with the site." *Id.* ¶ 48 & Ex. B.  Statements like these convey the false impression that Defendants maintain equivalent business ties to all of their review subjects and thus have no reason to favor any one of them.  But such statements, as will be further demonstrated through discovery, are false and misleading.  In short, in the unlikely event that a Sleepopolis reader encounters Defendants' limited disclosures of their affiliate relationships, those disclosures fail to inform the reader of Defendants' material connections to certain Casper competitors and they falsely imply or even expressly misrepresent that Defendants have relationships with *all* reviewed mattress brands.  *Id.* ¶¶ 47-60.

Finally, Defendants' false and misleading statements are material—and have caused and continue to cause Casper significant harm—because they have impacted consumer decisions and misdirected consumers looking to buy a Casper mattress toward Defendants' affiliate brands.  *Id.* ¶¶ 61-66.  Such false and misleading statements in commerce are plainly actionable as violations of Section 43(a) of the Lanham Act and Section 349 of the New York General Business Law. Defendants' motion to dismiss should accordingly be denied.

<u>ARGUMENT</u>

## I.    CASPER HAS SUFFICIENTLY ALLEGED A LANHAM ACT CLAIM

The Amended Complaint properly alleges a basis for a false advertising claim under the Lanham Act.  Under Section 43(a), "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act."  15 U.S.C. § 1125(a)(1).

Defendants argue that Casper's Lanham Act claim should be dismissed because: (1) Sleepopolis is not a competitor of Casper or an "actionable product"; (2) Casper's allegations are based on a failure to disclose and/or "mere opinion" rather than false or misleading statements of fact; (3) Casper's Amended Complaint cites the FTC Endorsement Guides, which confer no private right of action; (4) Sleepopolis readers were not influenced by Hales's misleading statements and/or omissions; and (5) Casper's alleged injury was not proximately caused by Hales. Defendants' first three arguments misstate the law and the allegations of the Amended Complaint. Defendants' remaining arguments, in additional to being inaccurate, are factual ones, which are improper on a motion to dismiss. Accordingly, and as further set forth below, Defendants' motion to dismiss should be denied.

### A.    Hales's Reviews Constitute Commercial Advertising or Promotion

Defendants' primary argument for dismissal is that this is not a typical Lanham Act case, and thus the Court should dismiss it. *See* Defs.' Mot. at 9-10. Not surprisingly, Defendants cite no law in support of this argument. Defendants instead put forth an emotional appeal, in which Defendants make several inaccurate and improper assumptions about why Casper chose to exercise its rights to put a stop to Defendants' unlawful behavior.[2]

But the Lanham Act plainly prohibits the type of false advertising engaged in by Defendants, which other courts, including in this District, have already held. *See, e.g., Enigma*, 2016 WL 3773394, at *21-25; *Am. Bullion, Inc. v. Regal Assets, LLC*, No. CV 14-01873 DDP ASX, 2014 WL 6453783, at *6 (C.D. Cal. Nov. 17, 2014), *on reconsideration in part*, No. CV

---

[2] Defendants even state that Casper targeted them because they "do not have the resources to fight back" (Defs.' Mot. at 10), which is almost comical given that they are represented by eminently capable (and not inexpensive) counsel. Defendants would like the Court to view them as poor bloggers that are being unfairly targeted, but as the Amended Complaint alleges—and which Defendants are desperately trying to prevent the Court from learning—Defendants have made considerable sums of money from their deceptive marketing scheme.

14-01873 DDP, 2014 WL 7404597 (C.D. Cal. Dec. 30, 2014), *appeal dismissed* (Mar. 20, 2015) (granting preliminary injunction of affiliate websites for false advertising).

To begin with, Defendants are engaging in conduct regulated by the Lanham Act. The Second Circuit defines "commercial advertising or promotion" under Section 43(a) as (1) commercial speech, (2) made for the purpose of influencing consumers to buy goods or services, and (3) disseminated sufficiently to the relevant purchasing public. *See Gmurzynska v. Hutton*, 355 F.3d 206, 210 (2d Cir. 2004). There is no dispute that Defendants provide links through which users can purchase mattresses from Casper's competitors. The Amended Complaint alleges—and Defendants concede—that Defendants receive money from these mattress companies every time a purchase is made through these affiliate links. AC ¶¶ 21-22; Defs.' Mot. at 6. Because Defendants promote Casper's competitors as comparatively superior to Casper in exchange for compensation from the sale (*see, e.g.*, AC ¶ 30), Defendants' reviews are advertisements for these affiliates. *See, e.g., Enigma*, 2016 WL 3773394, at *6-7; *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, No. 1:16-cv-592 (JCC/MSN), 2016 WL 3348431, at *7 (E.D. Va. June 15, 2016) ("The Court has little difficulty concluding that speech is commercial when it comes from a speaker whose organizational goal is to direct demand toward certain consumer goods, the speaker receives revenue based on the amount of those goods sold, that revenue is the speaker's largest source of income, and the speech in question directly promotes those same goods while disparaging the goods of a competitor.").

Defendants nonetheless argue that they cannot be held liable under the Lanham Act because they are not Casper's "competitor" and because Sleepopolis is not an "actionable product." According to Defendants, Hales is not a Casper competitor because he "merely *reviews* mattresses; he does not . . . sell them." Defs.' Mot. at 9 (emphasis in original). But the Supreme Court made clear that a plaintiff need not allege that the parties are direct competitors

10

to have standing under Section 43(a). *See Lexmark Int'l, Inc. v. Static Control Components*, 134 S. Ct. 1377, 1393 (2014). And Defendants' self-description that they do not sell mattresses is untrue in any event. The purpose of Sleepopolis, as the Amended Complaint contends, is to generate commissions via affiliate mattress sales. AC ¶ 5.

On this point, the recent decision in *Enigma Software* is instructive. In *Enigma*, plaintiff ESG, owner of an anti-malware program, sued the owner of www.bleepingcomputer.com ("Bleeping"). 2016 WL 3773394, at *1. Bleeping offers information and advice about anti-malware programs. *Id.* at *2. ESG alleged that Bleeping generates profits through its "Affiliate" program under which it receives commissions whenever a user clinks on an affiliate link and buys an affiliate product. *Id.* Bleeping had an affiliate relationship with ESG's competitor, but not ESG. *Id.* ESG's complaint alleged that, under the guise of giving unbiased expert advice, Bleeping directed traffic and sales away from ESG and to ESG's competitor from whom it received commissions. *Id.* The court found that ESG adequately pled that Bleeping's posts were commercial speech because ESG alleged that they promoted Bleeping's affiliates for the purpose of influencing customers to buy products in which Bleeping has a financial stake. *Id.* at *6-7.

The Amended Complaint alleges that Defendants' reviews promote affiliates and disparage Casper. For example, in a product comparison of Casper to Purple, Hales writes that "Purple is the outright better choice. The hyper-elastic polymer top layer in addition to the multiple layers of polyurethane foam simply make a more supportive, cooler, and higher performance mattress than the Casper." AC ¶ 37. And in his comparison review of Casper to GhostBed, Hales states that "GhostBed's added comfort lawyers, great support, and overall well rounded performance crushes Casper in a side-by-side comparison." *Id.* Hales naturally has an affiliate relationship with Purple and GhostBed, not with Casper, but falsely claims that he is unbiased and has equal relationships with everyone. *Id.* ¶¶ 29-30, 48-51. Accordingly,

Defendants' reviews are actionable under Section 43(a). *See Vidal Sassoon*, 661 F.2d at 277 (finding that advertisements touting flawed comparative product test results were actionable where consumers "would assume" a product "was competitively superior").

**B.     The Amended Complaint Alleges Actionable False and Misleading Statements**

A statement may be challenged under Section 43(a) if it is either "literally false, i.e., false on its face" or "likely to mislead or confuse consumers." *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007) (citations omitted). The Amended Complaint alleges numerous affirmative statements and omissions that are likely to mislead consumers, including literally false statements. *See, e.g.*, AC ¶¶ 32-51. *First*, as discussed, Defendants misrepresent the nature of their services by stating that their reviews are independent and unbiased. *Id.* ¶¶ 48-51. In reality, Defendants' reviews are intended to sell mattresses for brands that, unlike Casper, provide substantial compensation for those sales. *Id.* ¶¶ 30-31. Any existing disclosure, including any added after the original complaint, fails to inform consumers of Defendants' material connections to Casper's competitors and falsely implies or expressly misrepresents that Defendants have such connections with *all* of their review subjects, including Casper. AC ¶¶ 47-51. *Second*, Defendants' reviews constitute comparative advertisements and their unsubstantiated superiority claims—*i.e.*, that Casper's competitors are superior to Casper in terms of performance, support, materials, and comfort (*id.* ¶ 37)—are actionable under Section 43(a). Casper will further demonstrate the likely consumer confusion and the failure of Defendants' limited disclosures to cure that confusion during the course of discovery. Casper's allegations are therefore, at a minimum, sufficient to survive a motion to dismiss.

Courts have repeatedly held that, in this rapidly evolving area of digital advertising, the Lanham Act protects against such deceptive online practices. *See, e.g., Vitamins Online, Inc. v.*

*Heartwise, Inc.*, No. 2:13-CV-982-DAK, 2016 WL 538458, at *6 (D. Utah Feb. 9, 2016); *Am.*

*Bullion, Inc.*, 2014 WL 6453783, at *6; *iYogi Holding Pvt. Ltd. v. Secure Remote Support, Inc.*,

No. C-11-0592 CW, 2011 WL 6291793, at *15 (N.D. Cal. Oct. 25, 2011), *report and*

*recommendation adopted sub nom. iYogi Holding PVT Ltd. v. Secure Remote Support Inc.*, No.

C 11-0592 CW, 2011 WL 6260364 (N.D. Cal. Dec. 15, 2011) (posting of "shill reviews and false

and misleading information on consumer websites" constituted false advertising).[3]

For example, in *Vitamins Online*, the defendant instructed its employees to "vote" on

Amazon.com that positive reviews for defendant's product on that website were "helpful" and

negative reviews were "unhelpful." 2016 WL 538458, at *2. The defendant also encouraged

customers to post positive reviews on Amazon.com by offering customers free products and gift

cards. *Id.* The court denied defendant's motion for summary judgment, finding that "the

Lanham Act is broad enough to cover a wide range of deceptive practices, potentially including

voting on and incentivizing online reviews." *Id.* at *7. The court reasoned as follows:

> The court first notes that Vitamins Online is not arguing that the Amazon Review representations were literally false. More specifically, Vitamins Online is not arguing that NatureWise employees were voting as helpful reviews that were in reality unhelpful or that the reposts from consumers were counter to their actual experience with the NatureWise products. Instead, Vitamins Online is arguing that

---

[3] The cases cited by Defendants are entirely distinguishable and/or support Casper. *See e.g., Groden v. Random House, Inc.*, 61 F.3d 1045, 1051-52 (2d Cir. 1995) (advertising statements made to summarize an opinion within a book are not actionable, but those made about a book as a product are actionable); *Licata & Co. Inc. v. Goldberg*, 812 F. Supp. 403, 406 (S.D.N.Y. 1993) (individual one-to-one hearsay conversations are not actionable); *Lipton v. Nature Co.*, 71 F.3d 464, 474 (2d Cir. 1995) (assertion that research was "thorough" is puffery and not actionable); *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007) (dismissing case because plaintiff failed to allege that magazine actually published any articles containing the alleged misrepresentations); *Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08cv0442(DLC), 2016 WL 815205, at *8 (S.D.N.Y. Feb. 29, 2016) ("plaintiff has provided no evidence that [defendants] Dr. Tayar or Jay made any statement about Romeo & Juliette"); *Time Warner Cable, Inc.*, 2007 WL 1138879, at *4 (DIRECTV's statement *about itself* was puffery and not actionable).

the voting and the rewarding are giving a false impression that many unbiased consumers find positive reviews to be helpful and negative reviews to be unhelpful and that a high number of unbiased consumers chose to post positive reviews on Amazon.com without any anticipation of reward.

*Id.* at *6.

Defendants nonetheless argue that Casper's Lanham Act claim should be dismissed because Defendants contend it is based either (i) on Hales's "mere opinion" or (ii) solely on a failure to disclose, which Defendants argue cannot form the basis of a Lanham Act violation. Defs.' Mot. at 10-16. These arguments are meritless.

### 1. Defendants' Statements Are Not "Mere Opinion"

The Amended Complaint alleges misstatements of fact made by Defendants about (a) Defendants' services and (b) Casper's products, each of which are independently actionable. Contrary to Defendants' statements on Sleepopolis, Hales is not an unbiased blogger; Defendants are compensated affiliate marketers making affirmative statements that mislead consumers to believe otherwise. AC ¶¶ 29-31. Defendants argue that these statements are not actionable because they are not about a "product."[4] But Defendants' misstatements concern the nature of *Defendants' services*, which is explicitly actionable under Section 43(a). *See* 15 U.S.C. § 1125(a)(1) (a defendant's statement is actionable if it "misrepresents the nature . . . of his or her or another person's goods, services, or commercial activities").

In addition, Defendants' side-by-side comparisons and superiority claims amount to a representation concerning the inherent quality of Casper's competitors' mattresses over Casper's. A false comparative advertising claim arises when "[a] misleading comparison to a specific competing product" is made. *McNeilab, Inc. v. Am. Home Prods. Corp.*, 848 F.2d 34, 38 (2d

---

[4] To the extent the Second Circuit requires that the allegedly false and misleading statements be about an "inherent quality or characteristic" of a product, this relates to the Section 43(a) materiality requirement. *See Nat'l Basketball Ass'n v. Motorola, Inc.*, 105 F.3d 841, 855 (2d Cir. 1997). As discussed in Section I.D., below, Casper has adequately pled materiality.

Cir. 1988). When a statement claims that one product is superior to another and is capable of objective verification, the statement is not simply puffery but constitutes false comparative advertising. *See Software AG, Inc. v. Consist Software Sols., Inc.*, No. 08 Civ. 389(CM)(FM), 2008 WL 563449, at *13 (S.D.N.Y. Feb. 21, 2008) (McMahon, J.), *aff'd,* 323 F. App'x 11 (2d Cir. 2009) ("Consist's statements about its ability to offer ongoing maintenance services for Software AG's products are misleading statements of fact, not puffery, in that they are not exaggerated boasts, but are, rather, capable of verification.").

The Second Circuit's decision in *Vidal Sassoon* is on point. The *Vidal Sassoon* defendants argued that the false statements were not actionable because they concerned the results of consumer preference surveys and the manner in which the tests were conducted, not the "inherent quality" of the shampoo. The court noted that, while the version of the Lanham Act in effect at the time literally applied only to misrepresentations concerning the "inherent quality or characteristic" of a product, if the intent and effect of an advertisement was to lead consumers into believing that a product was comparatively superior, then the statement of superiority amounted to a representation concerning the product's inherent quality. *Id.* at 278; *see also Nat'l Ass'n of Pharm. Mfrs., Inc. v. Ayerst Labs., Div. of/& Am. Home Prods. Corp.*, 850 F.2d 904, 917 (2d Cir. 1988) ("In our view, appellants should be given the opportunity to develop their evidence that the January 1986 Letter misrepresented the inherent quality or characteristics of Inderal. Appellants claim that the Letter conveyed the false impression that Inderal is therapeutically superior to generic propranolol; whether or not pharmacists construed the Letter in this manner cannot be determined on consideration of a motion to dismiss.").

Hales's side-by-side comparisons are replete with statements that constitute false comparative advertising. For example, in his comparison of Casper to Brooklyn Bedding, Hales writes: "Brooklyn Bedding's design, performance, materials, and price point simply knock it out

of the park in a side-by-side comparison." AC ¶ 37. The review states, among other unsubstantiated claims, that the materials used by Brooklyn Bedding are superior to Casper's. Hales's statement that "[t]he hyper-elastic polymer top layer in addition to the multiple layers of polyurethane foam simply make a more supportive, cooler, and higher performance mattress than the Casper" is similarly unsubstantiated. *Id.* Such statements are not "opinions," but claims that must be substantiated prior to publication by an affiliate marketer such as Hales. *See Time Warner Cable, Inc.*, 497 F.3d at 154 (finding DIRECTV's advertisement claiming that cable's HD quality was inferior was actionable).

### 2.    Defendants' Material Omissions are Actionable

Defendants' argument that omissions are not actionable under the Lanham Act misstates the law and Casper's allegations. *See* Defs.' Mot. at 8. First, as explained above, Casper's claim does not rely solely on Defendants' failure to disclose material facts. Rather, Casper's claim rests on Defendants' false and misleading statements regarding Defendants' services, as well as their unsubstantiated superiority claims of Casper's competitors over Casper. Second, even if Casper's claim were based on Defendants' omissions, it is well settled that "a statement is actionable under § 43(a) if it is affirmatively misleading, partially incorrect, or untrue *as a result of failure to disclose a material fact*." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 921 (3d Cir. 1990) (emphasis added) (quoting 2 J. McCarthy, *Trademarks and Unfair Competition* § 27:7B (2d ed. 1984)); *see also Am. Home Prods. Corp. v. Johnson & Johnson*, 577 F.2d 160, 165 (2d Cir. 1978) (Lanham Act encompasses "clever use of innuendo, indirect intimations, and ambiguous suggestions"); *Gillette Co. v. Norelco Consumer Prods. Co.*, 946 F. Supp. 115, 131 (D. Mass. 1996) (noting that Congress intended for deceptive advertising to include "material omissions" in addition to "affirmative misrepresentations"). Accordingly, Casper has pled actionable misrepresentations made by Defendants.

### C.    The FTC Act Does Not Preclude Casper's Lanham Act Claim

As alleged in detail in the Amended Complaint, certain mattress brands are compensating and materially incentivizing Defendants to tout their brands over others, contradicting Defendants' assertions of independence and lack of bias. AC ¶¶ 29-51. By misleading consumers to believe that their reviews are independent and unbiased—and disparaging Casper in the process—Defendants' unlawful behavior is influencing consumer purchasing decisions to the detriment of Casper (which, unlike many of its competitors, is not providing Defendants with a financial incentive for positive reviews) and the unsuspecting public. *Id.* ¶¶ 55-60. Defendants argue that because the FTC Act requires that Defendants clearly and conspicuously disclose their affiliate relationships with those mattress brands, and because the FTC Act does not provide for a private right of action, Casper lacks standing to assert a Lanham Act claim based in part on conduct that also violates the FTC Act. (Defs.' Mot. at 14-16.) That is not the law.

Defendants' argument is based on the flawed premise that conduct that violates certain provisions of the FTC Act cannot form the basis of a false advertising claim under the Lanham Act. Defs.' Mot. at 14-16. But courts have rejected this very argument. *See, e.g., Manning Int'l Inc. v. Home Shopping Network, Inc.*, 152 F. Supp. 2d 432, 437 (S.D.N.Y. 2001) (rejecting defendants' argument that plaintiffs could not assert a Lanham Act claim based on a violation of the FTC's labeling guidelines); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999) (remanding for court to consider FTC's deceptive pricing guidelines in assessing plaintiff's Lanham Act claim). "[A]ny person who believes that he or she is likely to be damaged" by the use of a "false or misleading description of fact" may sue for violation of the Lanham Act. *Manning*, 152 F. Supp. 2d at 437 (quoting 15 U.S.C. § 1125(a)). Moreover, a "plaintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act." *Id.*; *see also B. Sanfield, Inc.*, 168 F.3d at 973 ("as the administrative agency

charged with preventing unfair trade practices, the Commission's assessment of what constitutes deceptive advertising commands deference from the judiciary").

While Casper's claims are not based on a mere failure to comply with the Endorsement Guides, Casper is permitted to rely on these guidelines to support its claim that Defendants' misstatements regarding their material connections to Casper's competitors were likely to confuse consumers in violation of the Lanham Act. *See* 16 C.F.R. § 255.5 ("When there exists a connection between the endorser and the seller of the advertised product that might materially affect the weight or credibility of the endorsement (*i.e.,* the connection is not reasonably expected by the audience), such connection must be fully disclosed.").

Defendants' reliance on *Wellnx Life Scis., Inc. v. Iovate Health Scis. Research, Inc.*, 516 F. Supp. 2d 270, 286 (S.D.N.Y. 2007), is misplaced. In *Wellnx*, the complaint alleged an agreement permitting a dietary supplement retailer to write editorial content for a bodybuilding periodical, but did not allege that the magazine actually published any articles written pursuant to the agreement. The court stated, in *dicta*, that any failure to attribute the article would not be actionable as false advertising under the Lanham Act. In contrast, Casper's allegations—that Hales's statements asserting and implying that he is unbiased and independent, or that he has an equal relationship with all mattress brands, are materially misleading and impact consumer purchasing behavior—are actionable Lanham Act claims and *Wellnx* does not counsel otherwise.

*Time Warner Cable, Inc. v. DIRECTV, Inc.*, No. 06 Civ. 14245 (LTS), 2007 WL 1138879 (S.D.N.Y. Apr. 16, 2007), is also entirely distinguishable. Time Warner argued that DIRECTV's pricing claim—HD services "starting at 29.99"—was *literally false* and on that basis the court denied Time Warner's request for a preliminary injunction. *Id.* at *3-6. This is inapposite to the facts and claims of the present case.

Thus, Defendants' assertion that the FTC Act precludes Casper's Lanham Act claim fails.

18

**D.    The Amended Complaint Alleges that Hales's False and Misleading Statements Affected Consumers' Purchasing Decisions**

Defendants are incorrect that the Amended Complaint fails to plead materiality, which is largely a factual dispute in any event. The materiality requirement focuses on whether the alleged misrepresentations were likely to have affected consumers' purchasing decisions. *See Mylan Pharm., Inc. v. Proctor & Gamble Co.*, 443 F. Supp. 2d 453, 463 (S.D.N.Y. 2006). Materiality, however, is "generally a question of fact poorly suited to a determination at the pleadings stage." *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 518 (S.D.N.Y. 2015). Indeed, many of the cases to which Defendants cite in support of their materiality argument are decisions on summary judgment or post-trial motions. *See Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 411 (S.D.N.Y. 2013) (finding defendant's misrepresentations were material in decision on post-trial motion); *Mylan Pharm., Inc.*, 443 F. Supp. 2d at 462 (denying summary judgment because a reasonable jury could find that defendant's misrepresentations would likely affect customer behavior).

The Amended Complaint describes how potential online mattress buyers are typically unable to try various mattresses prior to purchase. Instead they seek out and rely on websites such as Sleepopolis, which heavily influence consumers' purchasing decisions. *Id.* ¶ 18. Defendants openly admit, in fact, that Sleepopolis is intended to influence potential mattress buyers. *Id.* ¶ 29. Defendants' reviews—which feature prominently in Google search results for the Casper mattress and thus consumers are likely to read when looking to buy a Casper mattress—have deceived consumers into believing Defendants' purported independence and non-bias. *Id.* ¶¶ 61-64. Consumers have therefore bought from Casper's competitors *instead of Casper* because Defendants proclaim the former to be competitively superior. *Id.*

Casper has accordingly satisfied its pleading requirements for materiality. *See Conopco Inc. v. Wells Enters., Inc.*, No. 14 Civ. 2223 (NRB), 2015 WL 2330115, at *5 (S.D.N.Y. May 14, 2015) (denying motion to dismiss because materiality is generally a question of fact); *Student Advantage, Inc. v. CollegeClub.com*, No. 99 Civ. 8604 (JSR), 1999 WL 1095601, at *1 (S.D.N.Y. Dec. 3, 1999) (finding it "reasonably inferable" that merchants would contract with plaintiff's competitor because plaintiff alleged that merchants were misled by defendant's advertising).

Defendants' argument to the contrary is based on their subjective belief and assumptions regarding how consumers would allegedly react to various statements contained on Sleepopolis. Defs.' Mot. at 17-18. If Defendants have misled consumers—as Casper alleges—it is a question of fact as to whether the deception affected consumer decisions, as Casper also alleges. Parties engage in rigorous consumer surveys in Lanham Act cases to determine whether consumers are misled in analogous fact patterns. *See POM Wonderful LLC v. Organic Juice USA, Inc.*, 769 F. Supp. 2d 188, 201 (S.D.N.Y. 2011) (McMahon, J.) (denying summary judgment because expert surveys tend to show likely consumer confusion relating to plaintiff's advertisements); *Merck*, 920 F. Supp. 2d at 418-21 (discussing two surveys by expert to assess confusion among two groups to whom the advertisement was addressed).

The cases Defendants cite in support of their materiality arguments are inapposite. In *Nationwide CATV Auditing Serv., Inc. v. Cablevision Sys. Corp.*, No. 12-CV-3648 (SJF), 2013 WL 1911434 (E.D.N.Y. May 7, 2013), the plaintiff was contracting services to defendant, and when plaintiff's employee was charged with criminal activity, the defendant issued a public statement that it was suspending work with the plaintiff pending an investigation. *Id.* at *13. The court dismissed plaintiff's false advertising claim on the ground this statement did not constitute commercial advertising and promotion under the Lanham Act. *Id.* at *13-14. And in

*Nat'l Basketball Ass'n v. Motorola*, the court dismissed the NBA's false advertising claim because it was based on statements that were "simply irrelevant." 105 F.3d at 855. Motorola sold a handheld pager named "SportsTrax" that displayed updated information of professional basketball games in progress. The NBA's Lanham Act claim was based on defendants' statements that SportsTrax provides game updates "from the arena." The NBA argued that this statement violated the Lanham Act because SportTrax's data was actually taken from broadcasts. The court found the statement immaterial because the "inaccuracy . . . would not influence consumers at the present time, whose interest in obtaining updated game scores on pages is served only by SportsTrax." *Id.*

None of these cases support Defendants' argument that Casper has failed to plead materiality, which it plainly has done.

### E.    Casper Has Adequately Pled That Its Injuries Were Proximately Caused By Defendants

In *Lexmark*, the Supreme Court held that a plaintiff suing under the Lanham Act "must show economic or reputational injury flowing directly from the deception." 134 S. Ct. at 1391. Defendants argue that Casper cannot satisfy the proximate causation requirement because: (1) Hales merely told consumers not to buy a Casper mattress; he did not contend that they were illegal or defective; (2) Casper is likely to have lost sales because its product "was *actually less desirable*, not just because Hales said so in an allegedly biased manner"; (3) a consumer who bought a mattress that Hales said he preferred, but that was not to the consumer's liking, could have returned the mattress. *See* Defs.' Mot. at 20-21. These arguments, in addition to being somewhat illogical, raise a number of factual issues and make factual assumptions that are inappropriate on a motion to dismiss. As explained in Section I.D., above, Casper has adequately alleged how Defendants injured Casper through misdirected sales to Casper's

competitors and harm to Casper's reputation. AC ¶¶ 61-65. Casper is entitled to prove these injuries through discovery and trial.

Defendants' citation to *Wall & Assocs., Inc. v. Better Bus. Bureau of Cent. Va., Inc.*, No. 1:16-cv-119, 2016 WL 3087055 (E.D. Va. May 31, 2016), does not dictate a different result. In that case, a tax settlement business that had received low ratings from several regional Better Business Bureaus ("BBBs") sued these BBBs for false advertising. The plaintiff alleged that the BBBs falsely promoted the BBB rating system as a national, uniform, and unbiased standard when it is implemented by regional, independent licensees applying their own subjective, biased, and personal criteria. Plaintiff alleged that, as a result, consumers rely on BBB reviews and his business suffered. The Court found that plaintiff's asserted injury was "far removed from the 'classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch.'" *Id.* at *2 (quoting *Lexmark*, 134 S. Ct. at 1391). The injury to Casper, in contrast, is quite direct. Casper alleges that Defendants are compensated salesmen—paid by Casper's competitors—who are masquerading as independent "bloggers" to steer unsuspecting consumers away from Casper and toward the brands who are paying them commissions. *Id.* ¶¶ 39-40, 64.

Accordingly, Casper has properly and sufficiently alleged a violation of Section 43(a) of the Lanham Act and Defendants' motion should be denied.[5]

---

[5] The remaining cases cited by Defendants are decisions are entirely distinguishable. *See, e.g., Conte v. Newsday, Inc.*, No. 06-CV-4859, 2013 WL 978711, at *2 (E.D.N.Y. Mar. 13, 2013) (granting defendant's motion for summary judgment, because plaintiff's product had not yet been released to the public during the period when the false statements were made); *VRM Prods., LLC v. V2H ApS*, No. 2:13-cv-7719-CBM-JEMx, 2016 WL 1177834 at *9 (C.D. Cal. Mar. 18, 2016) (granting defendants' motion for summary judgment, noting that "although a plaintiff may initially rely on allegations to satisfy standing . . . it cannot obtain relief without evidence"); *Gifford v. U.S. Green Bldg. Council*, No. 10 CIV. 7747 LBS, 2011 WL 4343815, at *2

## II.   CASPER HAS SUFFICIENTLY ALLEGED A CLAIM UNDER SECTION 349 OF THE NEW YORK GENERAL BUSINESS LAW

Casper has similarly alleged a violation of Section 349 of the New York General Business Law ("GBL").  To state a Section 349 claim, a plaintiff must allege that "a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *See, e.g.,* *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015); *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010); *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (2012). The Amended Complaint sufficiently pleads these elements—and Defendants do not appear to argue otherwise.

Defendants argue instead that Casper must also allege "a threat to public safety" to state a Section 349 claim.  Defs.' Mot. at 24.  That is not a requirement for a GBL 349 claim.  As the New York State Court of Appeals has clarified, Casper need only allege injury to its business stemming from materially misleading, "consumer-oriented" conduct to state a Section 349 claim, which Casper has pled in detail in the Amended Complaint.  *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995); AC ¶¶ 62-65; *see also N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 13-14 (2d Dep't 2012) ("requir[ing] a showing of specific quantifiable harm to the public at large goes beyond the Court of Appeals' statement that a plaintiff need only show an 'impact' on consumers" and would be inconsistent with the principles of the statute) (citation omitted).

In *North State Autobahn*, the court found that a GBL 349 claim was sufficiently pled where independent vehicle repair shops brought suit against their competitors alleging the competitor shops had deceived consumers and drove them away from plaintiffs' shops.  102

---

(S.D.N.Y. Aug. 16, 2011) (pre-*Lexmark*, dismissing case because products are not in competition and defendant "do[es] not draw direct comparisons between the products").

A.D.3d at 13. "The plaintiffs' alleged injury did not require a subsequent consumer transaction; rather, it was sustained when customers were unfairly induced into taking their vehicles from the plaintiffs' shop to a DRP shop regardless of whether the customers ultimately ever suffered pecuniary injury as a result of the [] defendants' deception." *Id.* at 17. The plaintiffs' "direct business loss of customers" was adequate to plead a Section 349 claim. *Id.*

Defendants' argument that a GBL 349 claim requires an allegation of public danger is based on a flawed strain of case law apparently originating from *Sports Traveler, Inc. v. Advance Magazine Publishers, Inc.*, No. 96 Civ. 5150 (JFK), 1997 WL 137443 (S.D.N.Y. Mar. 24. 1997), where the court relied upon cases largely pre-dating *Oswego Laborers' Local 214 Pension Fund* for the proposition that a GBL 349 claim requires "allegations supporting an inference that the public's health or safety is at stake." *Sports Traveler*, 1997 WL 137443 at *3. Notwithstanding that some district courts continue to cite this proposition, the Second Circuit and New York State appellate courts are clear that GBL 349 is a commercial statute governing "consumer-oriented conduct," with no limitation to actions concerning only public health or safety. *See, e.g., Orlander*, 802 F.3d at 300-302 (GBL 349 claim related to a misleading computer warranty allowed to proceed).

The purpose of enacting Section 349 was to "protect people from consumer frauds" and ensure that "consumers have the right to an honest market place." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25 (quoting Mem. of Governor Rockefeller, 1970 NY Legis. Ann. at 472). "As such, the statute is limited in its application to those acts or practices which undermine a consumer's ability to evaluate his or her market options and to make a free and intelligent choice. *In this sense, the deception itself is the harm that the statute seeks to remedy.*" *N. State Autobahn, Inc.*, 102 A.D.3d at 13 (emphasis added).

Defendants have engaged in conduct that is likely to deceive the unsuspecting public into believing that Hales's recommendations on Sleepopolis and social media are independent and unbiased, when in fact they are influenced by Defendants' strong financial motive to steer consumers towards specific products.  Such conduct "undermine[s] a consumer's ability to evaluate his or her market options and to make a free and intelligent choice." *Id.*  This is precisely the type of "consumer-oriented" public harm that Section 349 seeks to remedy, and therefore Casper has properly alleged a Section 349 claim.

**CONCLUSION**

For the reasons set forth above, Casper has sufficiently alleged claims under Section 43(a) of the Lanham Act and Section 349 of the New York General Business Law, and respectfully requests that Defendants' motion to dismiss be denied in its entirety.

Dated:  New York, New York            FRANKFURT KURNIT KLEIN & SELZ, P.C.
        August 5, 2016

                                        By:  /s/ Craig B. Whitney
                                              Craig B. Whitney
                                              LiJia Gong (admitted *pro hac vice*)

                                        488 Madison Avenue
                                        New York, NY 10022
                                        Tel.:  (212) 980-0120
                                        Fax:  (212) 593-9175
                                        cwhitney@fkks.com
                                        lgong@fkks.com

                                        *Attorneys for Plaintiff Casper Sleep, Inc.*