UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────┐
│ USDC SDNY                   │
│ DOCUMENT                    │
│ ELECTRONICALLY FILED        │
│ DOC #:                      │
│ DATE FILED:  10 20 16       │
└─────────────────────────────┘
```

CASPER SLEEP, INC.,

        Plaintiff,

    -against-

DEREK HALES & HALESOPOLIS LLC,

        Defendants.

No. 16-cv-03223 (CM)

## MEMORANDUM DECISION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION TO DISMISS

Hon. Colleen McMahon, Chief Judge:

Plaintiff Casper Sleep, Inc. ("Casper") has brought suit against Defendants Derek Hales and Halesopolis LLC (collectively, "Hales")[1] under Section 43(a) of the Lanham Act, 15 U.S.C. §§ 1125, and § 349 of New York's General Business Law. It seeks declaratory relief, damages, a permanent injunction, pre- and post-judgment interest, as well as costs and attorney's fees. Hales now moves to dismiss all of Casper's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth in the memorandum decision and order below, Hales's motion to dismiss is DENIED in part and GRANTED in part.

## JURISDICTION AND VENUE

This Court has jurisdiction over the Lanham Act claim in this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1332(a) and 1338(a). The Court has subject matter jurisdiction

---

[1] For syntactical convenience, the Court associates singular pronouns ("he," "him," and 'his") with the collective term, "Hales."

1

over the state law claim in this action pursuant to 28 U.S.C. § 1367(a). Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

## THE COMPLAINT

The following facts are alleged in Casper's First Amended Complaint, First Am. Compl. ("FAC"), ECF No. 17, and are assumed true for purposes of this memorandum decision and order. *See Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

Casper was founded in 2014 and fast became a successful e-retailer of mattresses. Like many other online and brick-and-mortar businesses, Casper has been the subject of online scrutiny. Consumers, journalists, and industry specialists have evaluated Casper's products and compared them to other products on the market. Hales is one such specialist reviewer. He runs www.sleepopolis.com ("Sleepopolis"), where he writes reviews of and blogs about mattresses. Hales also publishes video reviews on his YouTube channel, and interacts with consumers, addresses consumer questions, and directs consumers to the Sleepopolis website using Twitter.

Hales makes use of affiliate marketing in his YouTube reviews and on the Sleepopolis website. Affiliate marketing is a form of internet advertising that operates like a referral service. It generates, for the referring website, a share of the revenue earned from consumers who purchase a product linked to the advertiser's site. In Hales's case, consumers read mattress reviews on the Sleepopolis website, and embedded in those reviews or alongside the reviews are URL hyperlinks to the websites of mattress companies with which Hales has affiliate marketing relationships. Hales also offers coupon codes for certain mattress companies. When a consumer purchases a mattress after clicking a link on the Sleepopolis site or after using Hales's coupon code, the affiliate company compensates Hales.

2

Hales is in an affiliate marketing relationship with certain mattress companies, not including Casper. *See* FAC ¶ 36, Ex. C. At some point before this lawsuit was filed, Hales disclosed his affiliate marketing relationship in at least three places on the Sleepopolis website: in a text-box sidebar labeled "Referrals & Honest Reviews," available in any given mattress review; and in both the "Commitment to Integrity & Honesty" and "Affiliate Links" subsections of his "Disclosures" page, accessible through a hyperlink in the "Referrals & Honest Reviews" sidebar.[2]

Casper alleges that these disclosures are false or misleading insofar as they make it seem like Hales's reviews are unbiased, when, in fact, his mattress endorsements are underwritten by the mattress companies featured positively in his reviews. Casper asserts that Hales should more clearly disclose his financial bias by improving the content and form of the disclosures. Casper also alleges that Hales's disclosures contain statements that are either literally untrue or are false by implication.

Casper further claims that Hales's affiliate marketing relationships—or the absence of a relationship—influence the tenor Hales's mattress reviews. Heeding his profit incentive, Hales publishes positive reviews for his affiliates' mattresses. Reciprocally, Casper's lack of affiliate relationship with Hales allegedly causes Hales to give Casper poor reviews, thereby steering consumers away from Casper mattresses and toward mattresses with whose sellers Hales has affiliate relationships. Hales does this overtly by publishing head-to-head comparison reviews in which he inevitably concludes that the non-Casper mattress is superior.

In sum, Casper alleges that Hales's pecuniary interests have made his reviews substantively untrue or, at the very least, misleading to the consumer, and nothing about his

---

[2] As of the writing of this Memorandum Opinion and Order, however, the Sleepopolis website appears to have been restructured and its disclosures, repositioned. *See also* FAC ¶ 58.

3

disclosures or disclaimers, which are also alleged to be false or misleading, mitigate these harms. To the extent Hales acts as a marketing bullhorn for his affiliates, Casper argues that Hales has violated both the Lanham Act and New York's General Business Law.

## DISCUSSION

I.   <u>Standards Governing a Motion to Dismiss</u>

### A. The Twombly-Iqbal "Plausibility" Standard

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, "a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." If a party fails to plead the elements of its cause of action must the claim be dismissed. *See, e.g., Galerie Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 630 n.11 (S.D.N.Y. 2003) (where plaintiff "fails to allege a fundamental element of a Lanham Act claim," a motion to dismiss is granted).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir. 2006) (internal citation and quotation marks omitted).

At the same time, however, a plaintiff is entitled to a generous reading of the complaint whereby where the Court construes all reasonable inferences from its allegations in favor of the plaintiff. *Lee v. Sony BMG Music Entm't, Inc.*, 557 F. Supp. 2d 418, 423 (S.D.N.Y. 2008). Accordingly, it is said that "[t]he standard of review on a motion to dismiss is heavily weighted

4

in favor of the plaintiff." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 413 (S.D.N.Y. 2007).

## B. Consideration of Documents Attached to or Referenced in the Complaint

As a general matter, courts consider only the content of a plaintiff's complaint when deciding a motion to dismiss. *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). Courts may, however, consider materials attached to a complaint where those outside documents are either incorporated by reference in the complaint, or where the complaint relies heavily on the terms and effect of those outside documents such that they can be considered integral to the complaint. *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

Here, Casper attached twenty-five exhibits to its FAC.[3] Hales has not objected to the inclusion of these exhibits. After reviewing the exhibits and their content in light of the allegations in the FAC, the Court finds them to be either integral to, or incorporated by reference in, the FAC and, therefore, properly attached to the FAC.

II.    Casper's Claims under the Lanham Act

### A. Statutory Scheme

Section 43(a) of the Lanham Act prohibits the use of false or misleading statements made in the context of advertising or promotion. Specifically, Section 43(a) imposes liability on:

> "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any . . . false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities."

15 U.S.C. §§ 1125(a)(1) & (a)(1)(B).[4]

---

[3] The twenty-five exhibits include Exhibits A, B-1 through B-14, and Exhibits C through L.

[4] Hales argues that Casper has attempted to bring a cause of action under the Federal Trade Commission ("FTC") Guides Concerning the Use of Endorsements and Testimonials in Advertising, promulgated under Section 5 of the FTC Act. *See* 16 C.F.R. § 255. This argument is a red herring. While Casper relies on the FTC's *interpretation* of

The Lanham Act confers a private right of action upon "any person who believes that he or she is or is likely to be damaged." 15 U.S.C. § 1125(a)(1). To establish standing to sue under this statute, a plaintiff must demonstrate a "reasonable interest to be protected" against the advertiser's false or misleading claims, *PPX Enters., Inc. v. Audiofidelity, Inc.*, 746 F.2d 120, 125 (2d Cir. 1984), and a "reasonable basis" for believing that this interest is likely to be damaged by the false or misleading advertising, *Coca-Cola Co. v. Tropicana Prods., Inc.*, 690 F.2d 312, 316 (2d Cir. 1982). The "reasonable basis" prong embodies a requirement that the plaintiff show both likely injury and a causal nexus to the false advertising.

Courts in this Circuit have limited the class of plaintiffs to those who allege a commercial or competitive injury. *See Berni v. Int'l Gourmet Rests. of Am., Inc.*, 838 F.2d 642, 648 (2d Cir. 1988); *see also Cecere v. R.J. Reynolds Tobacco Co.*, No. 98-cv-2011, 1998 WL 665334, at *2 (S.D.N.Y. Sept. 28, 1998) (citing cases). However, the plaintiff and defendant need not directly compete with one another. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1392 (2014) ("It is thus a mistake to infer that because the Lanham Act treats false advertising as a form of unfair competition, it can protect *only* the false-advertiser's direct competitors.") (emphasis in original).

To adequately plead a false advertising claim under Section 43(a), a plaintiff must allege plausible facts tending to show the following elements: (1) the defendant has made a false or misleading statement of fact about a good or service; (2) the false or misleading statement has actually deceived or has the capacity to deceive a substantial portion of the intended audience;

---

false advertising under the Lanham Act, Casper's claims are indisputably brought under the Lanham Act and Section 349 of the New York General Business Law. As Judge Rakoff recently pointed out in a separate case brought by Casper, this district has before held that a "plaintiff may and should rely on FTC guidelines as a basis for asserting false advertising under the Lanham Act." *Casper Sleep, Inc. v. Mitcham*, No. 16-cv-3224, 2016 WL 4574388, at *4 (S.D.N.Y. Sept. 1, 2016) (citing *Manning Int'l v. Home Shopping Network, Inc.*, 152 F. Supp. 432, 437 (S.D.N.Y. 2001)).

6

(3) the deception is material in that it is likely to influence purchasing decisions; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products. *See S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001); *see also Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310–11 (1st Cir. 2002).

## B. Application

Casper asserts that the following categories of statements on Hales's website are either untrue or misleading: (1) Hales's mattress reviews, including the comparisons he makes between Casper's product and other products; (2) certain statements in Hales's disclosures about his affiliate marketing relationships; and (3) certain statements about the extent to which Hales is influenced by his market affiliations. With the exception of certain statements that are alleged to be literally untrue, these statements are not actionable under the Lanham Act, as explained below.

### 1. Hales's Mattress Reviews

The FAC alleges that Hales's mattress reviews are not reviews at all, but are, instead, veiled advertisements for the companies with which he has affiliate marketing relationships, designed to shepherd readers away from Casper and toward Hales's affiliates. Snippets of these reviews can be found in fourteen exhibits to the FAC. In his reviews of individual mattresses, Hales wrote:

- "I'm impressed. I'm sleeping as well as I ever have. The Leesa mattress just feels incredible. So much so that a life-long stomach sleeper is able to sleep comfortably on his back and side." FAC ¶ 32, Ex. B-2 at 10.

- "The Purple mattress is one of the most interesting mattresses I have tested to date. The combination of materials provide a feel that I have not experienced anywhere else." *Id.*, Ex. B-2 at 13, through Ex. B-3 at 14.

7

- "This mattress if fairly unique in terms of overall feel . . . . Personally, I'm a big fan of the feel of the Novosbed." *Id.*, Ex. B-6 at 26.

- "Personally, I really enjoyed this feel. It felt as if the [Ghostbed] mattress softened up during my sleep to improve comfort and reduce restlessness." *Id.*, Ex. B-6 at 32.

When comparing Casper mattresses to mattresses sold by Hales's affiliates, Hales stated:

- "After sleep testing each mattress, I have come to the conclusion that Purple is the outright better choice. The hyper-elastic polymer top layer in addition to the multiple layers of polyurethane foam simply make a more supportive, cooler, and higher performance mattress than the Casper." *Id.* ¶ 37, Ex. B-8 at 42.

- "After sleep testing both mattresses I felt that the Helix was an overall better mattress in my opinion. The biggest difference between Casper and Helix is simply the level of customization + the thicker level of comfort layers." *Id.*, Ex. B-9 at 48–49.

- "After careful review and months of testing these two mattresses, I believe Brooklyn Bedding is simply the better mattress. Brooklyn Bedding's design, performance, materials, and price point simply knock it out of the park in a side-by-side comparison." *Id.*, Ex. B-10 at 55.

- "I have come to the conclusion that GhostBed is simply the better choice. GhostBed's added comfort layers, great support, and overall well rounded performance crushes Casper in a side-by-side comparison." *Id.*, Ex. B-11 at 62.

- "I believe the Leesa to be the better mattress. . . . I don't know what 'it' is, but Leesa definitely has it. It's hard to describe the balanced feeling of softness and support you get with the Leesa. I personally love the Leesa mattress." *Id.*, Ex. B-12 at 68.

Construing the FAC in the light most favorable to Casper, the Court reads the FAC to allege that the above statements are actionable, in and of themselves.[5]

Hales's reviews and the statements above are, on their face, statements of opinion about mattresses, whether about the virtues or vices of a particular mattress or about how one mattress compares with another. The Lanham Act does not apply to opinions. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1052 (2d Cir. 1995). It applies only to statements that assert or imply provable facts. *Id.* at 1051. Hales's opinions and comparisons are not objectively verifiable, because if there is one true thing in this world, it is that different people experience mattresses

---

[5] In fact, the FAC merely suggests that these statements *typify* Hales's alleged bias, and that the real con is that Hales is able to publish reviews in the first instance. *See* FAC ¶¶ 32, 35, 43, 45, 53 (reciting the above and other quotations as "example[s]").

8

differently, and have different preferences among mattresses. One man's comfortable mattress is another's "princess and the pea" sleep experience. In my own house, to take an example, one family member detests memory foam, while another will sleep on nothing else. It is simply not possible to "objectify" a sleeper's reaction to a mattress in a way that transforms what is essentially opinion into an objectively verifiable fact.

Casper insists that the reviews do not really reflect Hales's opinion; rather, they reflect the fact that some mattress companies give Hales a kickback if he gets them a sale via the hyperlink on his website (the ones that get good reviews) while others (the ones that get bad reviews) do not. But there is no exception to the "statements of opinion are not actionable" rule for statements of opinion that are influenced by factors such as a financial relationship. Hales's opinion may well be that people who pay him make superior mattresses, but that does not change the reviews, for Lanham Act purposes, from statements of opinion into statements of objectively verifiable fact.

On their face, the reviews offer to readers Hales's opinions about the qualities of various mattresses. The financial relationship between Hales and his affiliates is disclosed. Both on his web page and on his disclosure page, he says that he gets paid whenever a reader clicks on a manufacturer's hyperlink and buys a mattress from that affiliate. There are direct links to the websites of all of the mattresses he praises. There is no direct link to Casper's website. Casper essentially asserts that Hales ought to confess that he is influenced by his affiliations, but as long as the consumer is told about the affiliation and the financial reward that comes to Hales when a reader makes a purchase after clicking Hales's affiliate link, s/he is free to factor that into his/her evaluation of the value of Hales's reviews. The Lanham Act is not violated simply because Plaintiff does not utter this confession (which, by the way, may or may not be true).

9

The fact that some reviews are structured as comparisons, or that some reviews contain facts, does not automatically make either type of statement actionable. For example, the comparative statement that a mattress made by Purple is "technically superior" to Casper's mattress is also an opinion not capable of objective verification. The statement in full reads as follows: "the hyper-elastic polymer top layer in addition to the multiple layers of polyurethane foam simply makes [sic] a more supportive, cooler and higher performance mattress than the Casper" mattress. FAC ¶ 37, Ex. B-8 at 42. Hales's statement *sounds* objectively verifiable—indeed, it sounds like the kind of sales pitch that mattress salesmen deliver all the time as though they were speaking Holy Writ. But in the end this says nothing more than: "A mattress containing a hyper-elastic polymer top over multiple layers of polyurethane foam (*the fact*) feels more supportive and cool to me than a mattress like Casper's (*the opinion*) that does not have these features." The opinion part of the statement to which Casper objects cannot be objectively verified, because a sleeper's experience of the supportiveness and coolness of a mattress cannot be objectively verified—if it could, there would not be so many different types of mattresses in the world. Perhaps for that reason, Casper does not allege that this statement is actually false—it simply asserts that the statement is an example of a statement containing a verifiable fact. But absent an allegation that the *fact* portion ("hyper-elastic polymer top over multiple layers of polyurethane foam") is false—and there is no such allegation—the Lanham Act is not implicated.

Accordingly, the FAC does not plausibly plead that Hales's mattress reviews are actionable statements of fact, as is required by the Lanham Act.

### 2.  Hales's Disclosure of His Affiliate Marketing Relationships

Casper also alleges that Hales's disclosures of his affiliate marketing relationships are actionable because they fail to give adequate notice about Hales's financial interests. The offending statements are:

- "If you use one of my links and purchase a mattress or other product you should know that the respective companies pay me a small referral fee. These referral bonuses help me continue to create great content and pay for other expenses associated with the site. Most of the products reviewed were given to me by the manufacturer. Visit my full disclosures page for more information." FAC ¶ 48, Ex. B-1 at 8.

- "Many links on Sleepopolis are "affiliate links" (see below). If you click one of these links and purchase a mattress Sleepopolis will receive a small monetary commission. These links do not cost you a penny more. These referral commissions help to pay for the expenses associated with Sleepopolis (mattress storage space, video equipment, photography equipment, web hosting, servers, advertising, etc.)." *Id.* ¶ 50, Ex. B-1 at 1.

- "Some of the links found on Sleepopolis are "affiliate links". This means that if you click on a link and purchase a product Sleepopolis will receive a monetary commission. When you purchase a product through one of these links it does not cost you a cent more than if you were to go directly through the manufacturer's link. These 'affiliate links' simply track the origin of the referral sale." *Id.* ¶ 51, Ex. B-1 at 1.

As the above statements show, Hales plainly discloses his market affiliations in several places on his website. Consumers are fully informed that Hales gets paid if the consumer uses Hales's link or coupon code to purchase a mattress.

Casper alleges that the above statements are still misleading because they fail to warn consumers that Hales allows these marketing affiliations to alter the tenor of his mattress reviews. But even if Hales's disclosures are somehow inadequate, a failure to disclose, by itself, is not actionable under the Lanham Act. *See Register.Com, Inc.*, No. 02-cv-6915, 2002 WL 31894625, at *14. Statements by omission can, however, lead to Section 403(a) liability if they render affirmative statements false or misleading and if the plaintiff specifically identifies and links those affirmative statements and omissions in the pleadings. *See id.* In other words, the

alleged omission requires the existence of a separate affirmative statement of fact that is false or misleading.

Insofar as Casper purports to assign liability based on a non-disclosure, it must also link that non-disclosure to a separate, affirmative statement of fact that is false or misleading. This it cannot do, since the statements Casper cites—mattress reviews and comparisons—are statements of opinion. Casper cannot rely on Hales's disclosures for that purpose, either, because those are the same statements that are alleged to contain the actionable omissions. With no other actionable statements in contention, any omissions in Hales's mattress reviews do not give rise to Lanham Act liability.

### 3. Statements About Influence

Casper additionally alleges that Hales's disclosures are actionable because they contain untrue statements about the impact of Hales's marketing relationships on his mattress reviews. Hales stated the following:

- "No review or content is written, directed, or otherwise influenced by any manufacturer or sleep company." FAC ¶ 50, Ex. B-1 at 1.

- "No review or content is paid for by any manufacturer or sleep company." *Id.*, Ex. B-1 at 1.

- "No member of Sleepopolis is employed by any mattress or sleep company." *Id.*, Ex. B-1 at 1.

- "Sleepopolis does not have any paid advertisements. Any links, images, or promo codes you find on-site are there because they provide great value for my readers." *Id.*, Ex. B-1 at 1.

- "All reviews you find on Sleepopolis are genuine, honest, and based on my personal views of the product." *Id.* ¶ 48, Ex. B-1 at 8.

- "All content on Sleepopolis is 100% my own opinions and thoughts." *Id.* ¶ 50, Ex. B-1 at 1.

- "All companies pay Sleepopolis nearly the same amount per referral and no company receives preferential treatment because of these referrals." *Id.* ¶ 51, Ex. B-1 at 1.

The first four statements listed above give rise to a plausible Lanham Act claim. They contain verifiable facts that are alleged to be false, and Casper has properly connected those statements of fact to its alleged injuries. I also find that Casper has adequately pleaded that the statements actually deceived a substantial portion of Hales's intended audience in a material way, and that Hales placed these statements in interstate commerce through his website. *See S.C. Johnson*, 241 F.3d at 238. These four statements are Hales's only statements that are actionable under the Lanham Act.

The fifth and sixth statements are not necessarily false or misleading, even assuming the content is influenced by his commercial relationships. The fact that Hales receives a kickback does not make his thoughts any less his own. This statement cannot give rise to Lanham Act liability.

The seventh and final statement is not actionable, either. Casper asserts that it is literally false because Casper has no affiliate marketing relationship with Hales or Sleepopolis. FAC ¶ 30; Mem. of L. in Opp'n to Mot. to Dismiss 7, ECF No. 23. But this statement does not say that *Casper* is one of the companies that pays a referral, and the phrase "all companies" cannot be read to include Casper, since there is no allegation in the FAC that Hales's website contains any link to Casper's website. The disclosure says "if you click on the link to one of my affiliates, I get a referral fee." Casper is bringing this lawsuit because there is no link to it on Hales's website; it is not an "affiliate." This Court refuses to torture language to mean something more than what it says; I am *not* Lewis Carroll's Humpty Dumpty.

Furthermore, even if Hales's statement that "All companies pay Sleepopolis nearly the same amount per referral" were alleged plausibly, Casper has failed to plead that this statement in any way caused its injuries. Nowhere does Casper claim that consumers' mistaken belief that

13

Casper had an affiliate marketing relationship with Hales damaged Casper's reputation or took away its business. Rather, Casper alleges that Hales's poor reviews injured Casper's reputation and goodwill, deprived Casper of revenue, and distorted information in the mattress marketplace in a way that will cause Casper lasting and future harm. But those reviews, which contain statements of opinion, are not actionable under the Lanham Act.

III.   Casper's Claims under New York's General Business Law Section 349

Section 349 of the New York General Business Law prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." N.Y. Gen. Bus. Law § 349(a). To adequately plead a claim under Section 349, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (internal quotation marks omitted).

"A 'deceptive act or practice' has been defined as a representation or omission 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Shapiro v. Berkshire Life Ins. Co.*, 212 F.3d 121, 126 (2d Cir. 2000) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744 (1995)). The "consumer-oriented" element requires that the challenged "acts or practices have a broader impact on consumers at large." *Oswego*, 85 N.Y.2d 20, 623 N.Y.S.2d 529, 647 N.E.2d 741, 744.

Hales does not appear to dispute the above legal precepts. He instead argues that Casper's claim fails because the FAC contains no allegations that Hales's statements harmed the public at large or that they related to public health or safety. These arguments failed in *Casper Sleep, Inc.*

14

*v. Mitcham*, a case similar to this one before Judge Rakoff. Judge Rakoff roundly rejected Hales's theories, observing:

> The notion that a § 349 claim must implicate the public health or safety can be traced to a misreading of a 1997 district court decision, which noted that "federal courts have interpreted the statute's scope as limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45," and identified "potential danger to the public health or safety" as an example of such an offense.

*Id.* at *8. My own review of the case law gives me no cause to depart from this reasoning.

I further conclude that Casper has alleged facts that make its cause of action plausible. Casper has identified affirmative acts and omissions that are arguably materially deceptive or misleading to consumers at large. Casper also alleges injury and plausibly links Hales's deceptive or misleading acts to this injury: when Casper had an affiliate marketing relationship with Hales, Hales gave Casper positive reviews, and when Casper terminated the relationship, Hales gave Casper poor reviews. Taken together, these allegations are enough to nudge Casper's Section 349 claim from possible to plausible. Hales's motion to dismiss Casper's Section 349 claim is therefore denied.

## CONCLUSION

The motion to dismiss is DENIED as to Casper's claim under Section 349 of the New York General Business Law and insofar as the complaint alleges that Hales made certain false statements in violation of the Lanham Act. The motion to dismiss is GRANTED as to all other bases under Lanham Act. Accordingly, Hales's motion to dismiss is DENIED in part and GRANTED in part. This memorandum opinion and order resolves ECF No. 21 on the docket.

Dated: October 20, 2016

_____

U.S. District Judge

BY ECF TO ALL COUNSEL

16