UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

CASPER SLEEP, INC.

              Plaintiff,

     v.

DEREK HALES and
HALESOPLIS LLC,

             Defendants.

Case No. 16-cv-02736

**DEFENDANTS' MEMORANDUM IN SUPPORT
OF THEIR MOTION TO RECONSIDER, OR
IN THE ALTERNATIVE, FOR A PROTECTIVE ORDER**

Jeffrey S. Jacobson (JJ-8872)
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
(212) 808-5145
jjacobson@kelleydrye.com

Counsel for Defendants
Derek Hales and Halesopolis LLC

Defendants Derek Hales and Halesopolis LLC (collectively, "Hales") respectfully submit this memorandum of law in support of their motion, pursuant to Fed. R. Civ. P. 59(e) and Local Rule 6.3, asking this Court to reconsider its determination that plaintiff Casper Sleep, Inc. ("Casper"), has adequately pleaded its claim that Hales violated New York Gen. Bus. Law ("GBL") § 349; or, in the alternative, to (1) permit Hales to file an immediate motion for summary judgment demonstrating the truth of the four statements the Court found potentially actionable, and continue the present stay of discovery until Casper satisfies Fed. R. Civ. P. 56(d); and/or (2) grant a protective order limiting discovery.

## PRELIMINARY STATEMENT

After dismissing all of Casper's claims respecting Hales' online reviews of Casper's and other companies' mattresses and its claims under the Lanham Act, this Court permitted Casper to proceed with its claims under GBL § 349 respecting four statements that Hales made about his own website: (i) that "no review or content is . . . influenced by any manufacturer or sleep company" or (ii) "paid for" by them; (iii) that "[n]o member of Sleepopolis is employed by any mattress or sleep company"; and that (iv) "Sleepopolis does not have any paid advertisements." Slip. Op. at 12. The Court held that if these statements are proved false, they "are arguably deceptive or misleading to consumers at large." *Id.* at 15.

Casper's burden, however, was heavier than that: It had to allege "(1) consumer oriented conduct that is (2) *materially* misleading." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (emphasis added). Hales' dismissal briefing made clear that the challenged statements on the "Disclosures" page of his website, which data show that **over 99% of Hales' website visitors never even saw**, could not plausibly have been *material* to consumers' purchasing

1

decisions. Those decisions would have been affected predominantly by the detailed factual information about each mattress in his reviews, the accuracy of which Casper never challenged.

Indeed, Casper barely addressed materiality in its Complaint, including only a conclusory statement that "Hales's [allegedly] false and/or misleading statements are material." Am. Compl. ¶ 70. Casper made that conclusory statement, moreover, with respect to Hales' writings collectively, and not specifically with respect to the four specific assertions on Hales' separate "Disclosures" page that the Court has allowed Casper to challenge. Yet the Court seems to have accepted Casper's unsupported statement as sufficient, stating that "Casper has adequately pleaded that the statements actually deceived a substantial portion of Hales' intended audience in a material way." Slip Op. at 13. Hales respectfully requests reconsideration of that critical point and submits that because Casper has not pleaded and cannot plausibly plead that Hales "Disclosures" page materially affected consumers' purchasing decisions, its GBL § 349 claim should be dismissed. Hales notes that the defendant in *Casper Sleep, Inc. v. Mitcham*, No. 16-cv-3224 (JSR), 2016 WL 4574388 (S.D.N.Y. Sept. 1, 2016) — referenced by this Court in its opinion — has asked Judge Rakoff to reconsider the decision permitting Casper's GBL § 349 claim to survive in that case. (*See Mitcham* Docket Nos. 28 & 29.) That motion is pending.

Should the Court decline to grant reconsideration, Hales intends quickly to file a motion for summary judgment demonstrating that the four statements the Court found potentially actionable all are true. Hales can demonstrate readily through admissible evidence that he receives almost exactly the same referral link commission from Amazon.com when consumers use the Amazon link on his website to purchase a Casper mattress as Hales receives from other mattress companies when readers use those companies' referral links. Contrary to Casper's allegations, therefore, Hales has no financial incentive to recommend other mattresses over

Casper's. Hales also can demonstrate that neither he nor Halesopolis's sole other employee are "employed" by a mattress company, and that he has accepted no paid advertisements.

Hales requests that the Court continue the present stay of discovery until he files this motion for summary judgment, which he is prepared to do, if necessary, within ten days after the Court decides this motion for reconsideration. In the event Casper believes it needs discovery in order to oppose Hales' motion, it can make that request pursuant to Fed. R. Civ. P. 56(d). No other discovery should be required.

Should the Court decline to continue the present stay of discovery pending decision on Hales' summary judgment motion, Hales requests entry of a protective order limiting discovery to the narrow claim the Court has permitted it to pursue. Under GBL § 349, Casper can at most seek damages due to lost sales *in New York*. To claim those damages, Casper must prove that actual New York-based readers of Hales' blog would have bought a Casper mattress, but read the four "Disclosures" statements on Hales' website that Casper challenges, and were misled by those statements into purchasing a competing mattress. Discovery into any other matter would serve only to foist unnecessary costs on Hales, disproportionate to the issues at stake in the case.

## ARGUMENT

### I. CASPER HAS NOT PLAUSIBLY ALLEGED THAT THE STATEMENTS THE COURT FOUND ACTIONABLE WERE *MATERIALLY* MISLEADING.

In denying Hales' motion to dismiss Casper's GBL § 349 claim, the Court ruled that "Casper has identified affirmative acts and omissions that are arguably deceptive or misleading to consumers at large," and that "Casper alleges injury and plausibly links Hales's deceptive or misleading acts to this injury." Slip Op. at 15. But, as Hales argued in his motion to dismiss, a claim under GBL § 349 also requires proof of *causation*: "that the defendant's material deceptive act caused the injury." *Rapcinsky v. Skinnygirl Cocktails, L.L.C.*, No. 11 Civ. 6546

3

(JPO), 2013 U.S. Dist. LEXIS 5635, at *20 n.3 (S.D.N.Y. Jan. 9, 2013).  Causation certainly requires that a consumer actually saw the challenged statements before making her purchase.  *See, e.g., Gale v. IBM Corp.*, 781 N.Y.S.2d 45, 47 (2d Dep't 2004) ("If the plaintiff did not see any of these statements, they could not have been the cause of his injury.").  It also requires that the statements sufficed to be "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Oswego Laborers Local 214 Pension Fund v. Marine Midland Bank*, N.A., 85 N.Y.2d 20, 26 (1995).  Hales argued in his dismissal briefs that Casper did not sufficiently allege materiality and causation in its complaint, and Casper's brief had little answer to this, even before the Court greatly curtailed the statements by Hales that Casper can challenge in this case.

The Court meticulously reviewed all of the statements on Hales' website that Casper challenged and found only four to be potentially misleading and therefore possibly a sufficient basis for Casper's GBL § 349 claim.  Those four statements all appeared only on a separate page of Hales' website entitled "Disclosures" (subsequently renamed "How Sleepopolis Works") which readers of the Sleepopolis site would not even have seen unless they specifically navigated to that page.  None of these statements appeared on the pages containing Hales' actual reviews.  *See, e.g.,* Am. Compl. Ex. B-1 at 7-9.  The Court may take judicial notice of the fact that website visitors are as likely to click on a "Disclosures" page as they are to read a website's terms of use, and Hales can submit Google Analytics data demonstrating that, in the most recent six months, only 0.04% of page views to his site were of the "Disclosures" page, and only 0.18% of his page views were of the successor "How Sleepopolis Works" page.  In other words, 99% of his website visitors never saw these statements.  On the "Disclosures" page, moreover, the statements the Court found to be potentially misleading appeared immediately above two further disclosures, one stating that Hales receives monetary commissions when readers click on "affiliate link" on

his site and purchases mattresses; the other stating that "most products [Hales] review[ed] were given to [him] for free from the respective manufacturer." *Id.* at 1.

Hales' dismissal briefs demonstrated that Casper had not plausibly alleged the materiality of these particular statements to readers' purchasing decisions, given that Hales' reviews contained detailed and truthful factual information about the mattresses under comparison:

> A Sleepopolis visitor who looked only at the facts asserted in Hales' reviews would have seen that the Leesa, Brooklyn Bedding, and GhostBed mattresses Hales compared were all less expensive than Casper's, and at least as fully featured as Casper's. Visitors would have seen that the Helix and Casper mattresses had almost identical pricing, but that the Helix mattress was fully customizable, while the Casper mattress is one-size-sleeps-all. Visitors also would have had had the opportunity to watch videos that Hales recorded and posted showing intricate details about the mattresses he reviewed, how they are set up, and how they perform. [Opening Br. at 17 (citations omitted).]

In addition, as the Court noted in its opinion (at 3), "Hales disclosed his affiliate marketing relationship in at least three places on the Sleepopolis website," including on the same page containing the other statements Casper challenges.

In light of these undisputed facts, Casper should have faced a high hurdle to plead the materiality of the challenged affiliate disclosures to mattress-buying consumers. But Casper pleaded nothing more than the bare, conclusory statement that Hales' reviews "actually deceived potential mattress purchasers." Am. Compl. ¶¶ 69-70; *see* Opening Br. at 18. Its brief in opposition to dismissal, moreover, contended only that the *reviews* were material to some consumers' purchasing decisions, not that any of the *four specific disclosures* about Hales' relationships with mattress companies that the Court found potentially actionable — which many readers of Hales' reviews would not even have read — were material. *See* Opp. Br. at 19. Casper argued that consumer surveys eventually *might* support its claims of materiality, but it did not plead that it has conducted such surveys or, if so, what they showed. "Casper had the burden

5

to plead facts demonstrating that a reasonable consumer, . . . *because of* looking at [Hales'] opinion differently, would have ended up purchasing a Casper mattress." Reply Br. at 6.

Hales respectfully submits that the Court may have overlooked the causation requirement inherent in a GBL § 349 claim, and that the Court's having permitted Casper's consumer fraud claim to proceed amounted to "clear error" requiring correction. Hales recognizes that his burden on such a motion is heavy, but believes that the Court may have "overlooked relevant case law . . . which, had it been considered, might have reasonably altered the result." *In re AllianceBernstein Mut. Fund Excessive Fee Litig.*, No. 04 Civ. 4885 (SWK), 2006 WL 74439, at *1 (S.D.N.Y. Jan. 11, 2006). Here, addressing the case law requiring Casper to satisfy the causation/materiality requirement is necessary "to correct a clear error or prevent manifest injustice." *Catskill Devel., L.L.C. v. Park Place Ent'mt Corp.*, 154 F. Supp. 2d 696, 701 (S.D.N.Y. 2001). Hales respectfully requests that reconsideration.

Notably, the Court relied on Judge Rakoff's recent decision in Casper's case against another online mattress reviewer, "the Mattress Nerd" — a decision which the parties could not have addressed in their briefs. That defendant has moved Judge Rakoff to reconsider his decision,[1] but even if that decision stands, Hales submits that two key differences between this case and *Mitcham* should have caused this Court not to apply Judge Rakoff's decision to Hales' case. First, some of Mattress Nerd's reviews falsely "suggested . . . that [Mattress Nerd] has an affiliate relationship with Casper." *Mitcham*, 2016 WL 4574388, at *5. Casper makes no such

---

[1] The *Mitcham* defendant has sought reconsideration on the basis that the injury Casper has alleged in this case is "derivative," and therefore not cognizable under GBL § 349 pursuant to the New York Court of Appeals' decision in *City of New York v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 622 (2009). *See Mitcham*, No. 16-cv-3224 (JSR), Dkt. No. 29, at 2. Hales agrees with Mitcham's arguments, and should Judge Rakoff reconsider his decision, Hales will bring that reconsideration to this Court's attention.

6

claim against Hales.  Second, *Mitcham* featured an allegation that the Mattress Nerd, after having initially written a post proclaiming Casper's mattress to be competitively superior to others, "updated the post after Casper terminated its affiliate relationship with [him] so as to recommend a different mattress company altogether with whom he is affiliated."  *Id.*  Again, Casper's complaint against Hales contained no such allegations.  In reviews written after Casper ended Hales' affiliate relationship, Hales certainly stated his preference for newer market entrants over Casper's mattress, but Casper does not allege that Hales changed any past content, and this Court found none of the statements in Hales' reviews to be actionable.

Casper's having alleged that Hales' *reviews* caused it to have lost sales is not enough.  It must have alleged, plausibly, that the four specific statements the Court referenced on Hales' "Disclosure" page caused those losses.  Casper did not do that, and Hales submits it cannot.  The Court should reconsider its decision to allow Casper's GBL § 349 claim to proceed.

## II.     ALTERNATIVELY, THE COURT SHOULD CLARIFY CASPER'S BURDEN OF PROOF AND SCOPE OF POTENTIAL DAMAGES.

Because Casper has not pleaded facts to support a claim that Hales' statements respecting his affiliate relationships were material to any consumers' purchasing decisions, the Court should have dismissed those claims.  In the event the Court declines to grant reconsideration and allows Casper's claim to proceed, however, discovery should be limited and focused.

The truth of Hales' disclosures turns on readily provable facts:  The commission Hales receives from Amazon.com when Sleepopolis readers use the Amazon referral link on the site to purchase a Casper mattress is materially identical to the commission he receives from the mattress companies that Casper alleges he has a fee-based incentive to prefer.  This fact is objectively demonstrable, and Hales can quickly file a motion for summary judgment proving that Casper's termination of its direct affiliate relationship with Hales did *not* give him a

financial incentive to prefer any other mattress to Casper's. Hales can just as easily demonstrate that the "Disclosures" statements Casper challenges all are accurate, so consumers could not have been "misled" by them into giving Hales' reviews added weight in their purchasing decisions. If, after Hales moves for summary judgment, Casper believes it needs discovery in order to oppose the motion, it should have to comply with Fed. R. Civ. P. 56(d), and discovery should be limited to that which Casper attests to a need for "by affidavit or declaration."

Further, even to the extent that the Court may believe that material facts remain in dispute, or declines to stay other discovery during the pendency of Hales' summary judgment motion, Casper's discovery still should be limited to that which it needs to prove the alleged falsity of the challenged statements and that *New York* consumers were *materially* deceived by these statements. Casper cannot win this case simply by establishing, assuming it could do so, that *potential* mattress purchasers *might have been* deceived by these statements. Its burden is to demonstrate that *actual readers* of Hales' reviews *who reside in New York* (1) saw the statements Casper challenged, (2) were materially misled by them, and (3) would have purchased a Casper mattress but for having given Hales' reviews more weight than they otherwise would have.

The Court disagreed with Hales that Casper had to allege consumer *harm* in order to proceed with its claim under GBL § 349, but there can be no doubt that Casper still must prove material consumer *deception*. By definition, GBL § 349 claims address "consumer-oriented conduct." *Orlander*, 802 F.3d at 300. In *North State Autobahn, Inc. v. Progressive Ins. Co.*, 102 A.D.3d 5 (2d Dep't 2012) — the case upon which Casper principally relied to claim that businesses may sue for lost profits under GBL § 349 even without a showing that consumers were harmed — the plaintiff still had to prove that "customers were misled into taking their vehicles from the plaintiffs to competing repair shops that" were affiliates of the defendant. *Id.*

8

at 17. Casper has the same burden: to put forward New York-based readers of Hales' website who would have bought a Casper mattress but allegedly were misled by the challenged statements into buying a different mattress instead. Discovery should be limited to evidence relevant to that claim, including proof of Casper's alleged lost sales *in New York only*.

Casper has no possible claim against Hales under GBL § 349 for alleged lost sales outside New York. GBL § 349 prohibits deceptive acts "in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]." As the Second Circuit recognized in *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115 (2d Cir. 2013), the New York Court of Appeals "appears to have interpreted the limiting phrase 'in this state' . . . to require that 'the transaction in which the consumer is deceived occur in New York." *Id.* at 122, *quoting Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324 & n.1 (2002). Here, there is no dispute that Halesopolis and Hales reside in Arizona and that Hales wrote his content there. Hales can demonstrate that less than eight percent of Sleepopolis readers accessed the site from New York. Further, in the most recent six months, Hales' "Disclosures" page had only 2,238 total page views, and the successor "How Sleepopolis Works" page had only 9,840 views (including from the lawyers in this case). Even using the full number, if only eight percent of those views were from consumers in New York, then the number of New Yorkers who could have been misled by any of the statements the Court found potentially actionable is less than 1,000.[2]

---

[2] In a footnote, the Court stated that it was retaining jurisdiction over this matter because Casper's complaint alleged the amount in controversy to be over $75,000. *See* Slip Op. at 15 n.6. Casper's Amended Complaint (at ¶ 65) posited losses of unspecified "millions of dollars," but Casper has not quantified its losses (if any) in its home state of New York. Hales submits that with the case now limited to New York losses, Casper must allege more jurisdictional facts before the Court can conclude it possesses subject-matter jurisdiction over the case.

There appears to be no precedent for allowing a New York-based business to sue an out-of-state website under GBL § 349 for alleged *nationwide* lost sales.  It is clear from *Goshen* and its progeny, moreover, that if a New York-based *consumer* proposed to sue Hales in a class action under GBL § 349, that consumer could not include non-New Yorkers in the proposed class.  *See, e.g., Cline v. TouchTunes Music Corp.*, No. 14 Civ. 4744 (LAK), 2016 WL 5478432 (S.D.N.Y. Sept. 29, 2016) (dismissing GBL § 349 claims of non-New York plaintiff); *In re Frito Lay N. Am., Inc. All-Natural Litig.*, No. 12-MD-2413 (RRM), 2013 U.S. Dist. LEXIS 123824, at *57-*60 (E.D.N.Y. Aug. 29, 2013).  No basis exists for Casper to claim that it may seek damages for alleged deception of consumers *outside New York*, any more than a consumer could do so.

## CONCLUSION

For these reasons, the Court should reconsider its prior decision and dismiss Casper's claims, or, in the alternative, grant a protective order limiting discovery as requested above.

> Respectfully submitted,

Dated: October 26, 2016
New York, New York

> By:   /s/ Jeffrey S. Jacobson
> **KELLEY DRYE & WARREN LLP**
> Jeffrey S. Jacobson
> 101 Park Avenue
> New York, NY  10178
> (212) 808-7800 phone
> (212) 808-7987 fax
>
> *Counsel for Derek Hales and Halesopolis LLP*