UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CASPER SLEEP, INC.,                                             :
                                                               :
         Plaintiff,                                    :
                                                               :   Case No. 16 Civ. 3223 (AJP)
   -against-                                              :
                                                               :
DEREK HALES and HALESOPOLIS,                                    :
                                                               :
        Defendants.                                   :
------------------------------------------------------------------X


**PLAINTIFF CASPER SLEEP, INC.'S MEMORANDUM OF LAW IN SUPPORT OF
ITS MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS**

FRANKFURT KURNIT KLEIN & SELZ, P.C.
Craig B. Whitney, Esq.
Caren L. Decter, Esq.
Lily Landsman-Roos, Esq.
488 Madison Avenue
New York, New York 10022
Tel.:  (212) 980-0120
Fax:  (212) 593-9175
cwhitney@fkks.com
cdecter@fkks.com
llandsmanroos@fkks.com

*Attorneys for Plaintiff Casper Sleep, Inc.*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 2

    The Amended Answer and Counterclaims ........................................................................ 3

    The Original Proposed Amended Answer and Counterclaims ........................................... 6

LEGAL STANDARD ................................................................................................................... 7

ARGUMENT ................................................................................................................................ 8

I.     THE COUNTERCLAIMS ARE ENTIRELY SPECULATIVE, EVEN THOUGH
      DEFENDANTS HAD THE BENEFIT OF FULL DISCOVERY FROM CASPER ......... 8

II.    DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR TORTIOUS
      INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE WITH
      GOOGLE ...................................................................................................................... 10

      A.    Defendants Have Failed to Allege a Business Relationship with Google ............ 11

      B.    Defendants Have Failed to Allege that Casper Acted Solely Out of Malice, or
           Used Dishonest, Unfair, or Improper Means ........................................................ 13

      C.    Defendants Fail to Allege that Casper's Interference Caused Any Injury to Its
           Relationship with Google .................................................................................... 15

III.   DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF NEW
      YORK'S GENERAL BUSINESS LAW § 349 ................................................................ 16

      A.    Defendants Fail to Allege the Factual Detail Required for a GBL
           § 349 Claim .......................................................................................................... 16

      B.    Defendants Fail to Allege that Casper Engaged in Consumer-Oriented, Materially
           Misleading or Deceptive Conduct ....................................................................... 17

CONCLUSION ........................................................................................................................ 188

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
    326 F.3d 63 (2d Cir. 2003)..............................................................................3

*Ascentive, LLC v. Opinion Corp.*,
    842 F. Supp. 2d 450 (E.D.N.Y. 2011) ...........................................................18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................7, 8

*Bank of Montreal v. Optionable, Inc.*,
    No. 09 CIV. 7557 (GBD), 2012 WL 3686294 (S.D.N.Y. Aug. 24, 2012) ............13

*Billard v. Rockwell Int'l Corp.*,
    683 F.2d 51 (2d Cir. 1982)................................................................................9

*Carvel Corp. v. Noonan*,
    3 N.Y.3d 182 (2004) ...................................................................11, 13, 14, 15

*Cortec Indus., Inc. v. Sum Holding L.P.*,
    949 F.2d 42 (2d Cir. 1991)...............................................................................6

*Dessert Beauty, Inc. v. Fox*,
    568 F. Supp. 2d 416 (S.D.N.Y. 2008).............................................................12

*Devaney v. Chester*,
    813 F.2d 566 (2d Cir. 1987).............................................................................9

*Friedman v. Coldwater Creek, Inc.*,
    551 F. Supp. 2d 164 (S.D.N.Y. 2008).............................................................14

*Gen. Motors Corp. v. Dealmaker, LLC*,
    No. 07-CV-141, 2007 WL 2454208 (N.D.N.Y. Aug. 23, 2007) ...........................12

*Gottlieb Dev. LLC v. Paramount Pictures Corp.*,
    590 F. Supp. 2d 625 (S.D.N.Y. 2008)....................................................8, 16, 17

*Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*,
    No. 08 CIV. 7956 PKC, 2013 WL 395096 (S.D.N.Y. Feb. 1, 2013) ....................14

*Hannex Corp. v. GMI, Inc.*,
    140 F.3d 194 (2d Cir. 1998).............................................................................11

*Hassan v. Deutsche Bank A.G.*,
    515 F. Supp. 2d 426 (S.D.N.Y. 2007).....................................................................14

*Henneberry v. Sumitomo Corp. of Am.*,
    415 F. Supp. 2d 423 (S.D.N.Y. 2006).....................................................................11

*Horowitz v. Stryker Corp.*,
    613 F. Supp. 2d 271 (E.D.N.Y.2009) ......................................................................17

*I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*,
    856 F. Supp. 168 (S.D.N.Y. 1994) ...........................................................................10

*Kirch v. Liberty Media Corp.*,
    449 F.3d 388 (2d Cir. 2006).............................................................................10, 15

*Lombard v. Booz-Allen & Hamilton, Inc.*,
    280 F.3d 209 (2d Cir. 2002).....................................................................................14

*Luna v. N. Babylon Teacher's Org.*,
    11 F. Supp. 3d 396 (E.D.N.Y. 2014) .........................................................................8

*Masefield AG v. Colonial Oil Indus.*,
    No. 05 CIV. 2231 (PKL), 2006 WL 346178 (S.D.N.Y. Feb. 15, 2006)....................13

*Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*,
    631 F.3d 57 (2d Cir. 2011).........................................................................................8

*Miller v. Hehlen*,
    209 Ariz. 462 (Ct. App. 2005) .................................................................................10

*Mills v. Polar Molecular Corp.*,
    12 F.3d 1170 (2d Cir. 1993).......................................................................................7

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*,
    85 N.Y.2d 20 (1995) .................................................................................................17

*PKG Grp., LLC v. Gamma Croma, S.p.A.*,
    446 F. Supp. 2d 249 (S.D.N.Y. 2006)................................................................10, 13

*Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*,
    138 F. Supp. 3d 303 (S.D.N.Y. 2014)......................................................................15

*Rasmy v. Marriott Int'l, Inc.*,
    No. 16-CV-04865 (AJN), 2017 WL 773604 (S.D.N.Y. Feb. 24, 2017).....................6

*Sterling Interiors Grp., Inc. v. Haworth, Inc.*,
    No. 94 CIV. 9216 (CSH), 1996 WL 426379 (S.D.N.Y. July 30, 1996).....................11

*Ticheli v. Travelers Ins. Co.*,
No. 1:14-CV-00172, 2014 WL 12587066 (N.D.N.Y. Dec. 23, 2014) ....................................10

*Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*,
834 F. Supp. 605 (E.D.N.Y. 1993) .......................................................................................9, 16

*U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*,
937 F. Supp. 1039 (S.D.N.Y. 1996).............................................................................................9

*Weaver v. Chrysler Corp.*,
172 F.R.D. 96 (S.D.N.Y. 1997) .................................................................................................16

*Woods v. Maytag Co.*,
No. 10-CV-0559 (ADS) (WDW), 2010 WL 4314313 (E.D.N.Y. Nov. 2, 2010)....................17

*Yanes v. Ocwen Loan Servicing LLC*,
No. 13-CV-2343 JS ARL, 2015 WL 631962 (E.D.N.Y. Feb. 12, 2015)..................................7

**Statutes**

New York General Business Law Section 349....................................................... *passim*

**Rules**

Fed. R. Civ. P. 8(a) ...................................................................................................................8, 9

Fed. R. Civ. P. 12(b)(6).......................................................................................... *passim*

Plaintiff Casper Sleep, Inc. ("Casper") respectfully submits this memorandum of law in support of its motion to dismiss the counterclaims asserted against it in the Amended Answer and Counterclaims filed by Defendants Derek Hales and Halesopolis LLC (collectively, "Defendants"), dated April 28, 2017 (the "Counterclaims").

## PRELIMINARY STATEMENT

Defendants' Counterclaims have no chance for success.  They allege that Casper perpetrated a negative search engine optimization ("SEO") attack on Defendants' website, Sleepopolis, to reduce Sleepopolis's ranking in Google searches, which Defendants quickly remedied.  On that basis, Defendants claim that Casper tortiously interfered with Defendants prospective economic advantage with Google and violated Section 349 of New York General Business Law ("GBL").  Defendants have no evidence linking Casper to the alleged SEO attack, however, and no hope of obtaining such evidence, because they have already had full discovery on this issue.  Defendants assert their Counterclaims now—nearly two years after the alleged SEO attack and over a year after Casper asserted its claims against Defendants in this case—merely to spin a different narrative before the Court and distract from Defendants' own wrongdoing in advance of the parties' upcoming settlement conference.  Defendants have in fact already taken to blogging about their Counterclaims on Sleepopolis.  (*See* https://sleepopolis.com/blog/casper-sues-sleepopolis-with-federal-lawsuit/.)[1]

But the Counterclaims cannot survive a motion to dismiss under Rule 12(b)(6) for several reasons.  *First*, they are speculative and devoid of any allegation of *fact* that, if true, would prove Casper responsible for the alleged SEO attack.  They allege only that the SEO attack occurred,

---

[1] To the extent Defendants attempt to modify the webpage in response to this motion, a copy is included as Exhibit A to the Declaration of Craig B. Whitney ("Whitney Decl."), filed concurrently herewith.

from which Casper allegedly stood to benefit, and that Casper hired an SEO consulting firm around that time.  No reasonable inference of Casper's responsibility for the attack can be drawn from those allegations.  Defendants' failure to allege a sufficient factual basis is magnified given that Casper has already produced all documents regarding its Sleepopolis-related SEO strategy in discovery.  If Casper were responsible for the alleged SEO attack and there were *any* evidence linking Casper to the alleged conduct, Defendants would have it.  Clearly, there is none.

*Second*, even accepting Defendants' conclusory allegations, they fail to provide any plausible theory that Defendants had an actionable "business relationship" with Google or that an SEO attack could amount to a tortious interference of that non-existent relationship.  *Third*, there is likewise no actionable GBL § 349 claim based on a company's SEO practices.  Indeed, were the law interpreted otherwise, there could be a rash of speculative and baseless lawsuits concerning commonplace SEO business practices.  Accordingly, Casper respectfully requests that the Court grant its motion and dismiss Defendants' Counterclaims with prejudice.

## BACKGROUND

Casper initiated this action on April 29, 2016, and filed its Amended Complaint on June 10, 2016.  Casper alleges that Defendants violated Section 43(a) of the Lanham Act and GBL § 349  through Defendants' affiliate marketing scheme wherein they pose as an independent, unbiased mattress reviewer when in reality they are steering consumers towards mattress brands that compensate them to do so.  After the Court denied in part and granted in part Defendants' motion to dismiss the Amended Complaint (*see* ECF No. 28), Defendants filed an Answer to the Amended Complaint on November 2, 2016.  (*See* ECF No. 32.)

The parties commenced discovery shortly thereafter and, by order of this Court, document production for both sides was substantially complete on or around March 10, 2017.

(*See* Feb. 24, 2017 Hearing Tr. (ECF No. 52) at 11:11–15.)[2]  Among other documents collected and produced by Casper were reports generated by Casper's "online reputation management firm," which show Casper's "search engine optimization ["SEO"] strategy for, among other things, minimizing the damage that's being done by defendants' website and keeping them down in search results[.]"  (*See* Mar. 29, 2017 Hearing Tr. (ECF No. 56) at 7:10–11, 9:1–4.)

*The Amended Answer and Counterclaims*

On April 21, 2017, Defendants sought and obtained leave to file their Counterclaims. (*See* ECF No. 58.)  The Counterclaims assert two claims against Casper: (1) tortious interference with a prospective economic advantage with Google; and (2) violation of New York General Business Law § 349.  The sole basis for the Counterclaims is Defendants' allegation that Casper "perpetrated [a] negative SEO attack on Sleepopolis, either itself or at its direction."  (*Id.* ¶ 40.) The majority of the 54-paragraph Counterclaims contains irrelevant background allegations designed merely to cast Casper in a negative light.  The allegations essential to Defendants' counterclaims are thin, and consist entirely of the following story:

Defendants allege that shortly after Casper terminated its affiliate program with Sleepopolis in July 2015, Sleepopolis "came under a massive negative SEO attack" (*id.* ¶ 27), meaning that "[t]housands of negative SEO links to Sleepopolis began to appear on untrusted sites around the internet . . . soon growing to tens of thousands."  (*Id.* ¶ 32.)  The links allegedly were "principally" to Sleepopolis's main page and the page containing links to all Sleepopolis

---

[2] This Court's February 24, 2017 order that document production should be complete within two weeks was principally directed at Defendants.  *See id.*  But Casper followed that same directive, and its production was also substantially complete by March 10, 2017.  (*See* Whitney Decl. ¶ 5.) The Court may consider its own orders and hearing transcripts on a motion to dismiss.  *See, e.g.*, *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (noting that on a motion to dismiss pursuant to Fed. Civ. P, 12(b)(6), a court may take judicial notice of its own records).

mattress reviews, as well as to the Sleepopolis category page pertaining to Casper.  (*Id*. ¶ 33.)
Although the Counterclaims attempt to deemphasize this point, apparently some links were to
pages pertaining to mattresses "other than Casper's."  (*Id.*)  Because Google "consider[s] links
placed on [] untrustworthy sites *negatively* when determining search rankings," (*id.* ¶ 30
(emphasis in original)), Sleepopolis's Google ranking dropped "temporarily" as a result.  (*Id.*
¶¶ 32, 40.)  On this basis alone, Defendants conclude that the "negative SEO attack principally
benefitted Casper" (*id.* ¶ 34), ignoring the obvious benefit to all of the other mattress reviewers
and affiliate marketers that would have been promoted ahead of Sleepopolis on Google search
results as a consequence of Sleepopolis's demotion—any one of which is an equally, if not more,
likely candidate as the perpetrator of the alleged attack.

Defendants further allege that two other popular websites that Casper later sued for
operating the same affiliate marketing scheme as Sleepopolis experienced a "similar" SEO attack
"at the same time."  (*Id.* ¶ 35.)  Defendants tellingly do not allege that these were the only
websites to experience such an SEO attack around that time.  And Defendants' final accusation is
that, at some point "coincid[ing] in time" with the alleged attack, Casper hired a "reputation
management" firm.  (*Id.* ¶ 38.)  That is the entire premise on which Defendants base their
counterclaims.  Without a single fact actually linking Casper to the alleged attack—even with the
benefit of full discovery—Defendants' claims rest solely on the allegation that they "believe –
and, on that basis, allege – that Casper perpetrated this negative SEO attack on Sleepopolis,
either itself or at its direction."  (*Id.* ¶ 39.)

This thinly spun tale would be problematic for any complaint.  But here, where
Defendants have had the benefit of full discovery, the absence of facts is even more pronounced.
Since March 2016, Defendants have had full access to Casper's SEO strategy as it relates to
Sleepopolis, including correspondence with and periodic reports produced by the "reputation

management firm" they decry. (*See* Mar. 29, 2017 Hearing Tr. (ECF No. 55) at 7:10–15).[3]  Yet the Counterclaims contain no factual allegations linking Casper to the negative SEO attack or stating that Casper ever expressed any intent to engage in such behavior.  This is not surprising, because Casper has already informed Defendants that it had no involvement in any alleged SEO attack.  But the failure to allege any involvement by Casper nonetheless underscores the frivolousness of the Counterclaims.

Moreover, the timing of these Counterclaims suggests that they are intended to harass Casper and divert attention from Defendants' own wrongdoing in anticipation of the parties' upcoming settlement conference.  The alleged SEO attack at issue occurred nearly *two years ago*, well before Casper brought this action.  Defendants did not bring a claim previously because they had no legitimate basis to accuse Casper of perpetrating the alleged action.  The only "new fact" learned in discovery in this action, however, was that Casper had retained an SEO consultant—hardly a remarkable revelation given that Hales himself provides SEO consulting for Casper's competitor.  (*See id.* at 9:11-12.)  Defendants nevertheless waited until near the end of discovery and just prior to the June 14 settlement conference to file their Counterclaims.  They now ask this Court to credit their false accusations and overlook the absence of any factual connection between Casper and the negative SEO attack they accuse Casper of conducting.

---

[3] Defendants, in opposition, may create a list of unrequested discovery that they purportedly need to prove these claims.  As previously discussed, however, Defendants have had, since March 10, 2017 (if not earlier), documents showing the work that Casper's SEO consulting firm performed and documents showing the entirety of Casper's SEO strategy related to Defendants.  (*See id.* at 7:9–12:15.)  If there were documents supporting the Counterclaims, Defendants would already have them.

*The Original Proposed Amended Answer and Counterclaims*

Notably, an earlier version of the Counterclaims did, in fact, allege a factual link between Casper and the SEO attack that is conspicuously missing from the as-filed Counterclaims.  That allegation was baseless and Defendants ultimately removed it.

More specifically, on April 18, 2017, Defendants' counsel sent proposed counterclaims to Casper's counsel and requested Casper's consent to filing those counterclaims.  Those proposed counterclaims contained many assertions that were not included in the version later submitted to the Court, most significantly that "Casper, itself or through others, placed over 125,000 links to the Sleepopolis website on 'fake' sites . . . [.]"  (*See* Whitney Decl., Ex. B at ¶ 26.)

Because Casper denies placing any links to Sleepopolis on "fake" sites—let alone hundreds of thousands of such links—it notified Defendants that they had no basis for such unfounded accusations:

> The crux of your argument is on paragraph 26 of the proposed counterclaim, where you allege that "Casper, itself or through others, placed over 125,000 links to the Sleepopolis website on 'fake' sites . . . [.]"  Casper vehemently denies this accusation, and it is unclear what evidence you have to support this claim, particularly given your statement that the evidence was obtained through Casper's document production.  If there are documents in your possession supporting this accusation, I would invite you to share them with us.  Otherwise, I would caution against filing a claim without evidentiary basis or support.

(Whitney Decl., Ex. C.)  Defendants did not explicitly agree to remove this unfounded accusation, but not surprisingly it was absent from the as-filed version of the Counterclaims.

The accusation that Casper placed the alleged links to Sleepopolis on fake sites—while baseless—at least provided a necessary causal link between the existence of an SEO attack and Casper.  It at least alleged actual conduct on Casper's part in connection with the alleged negative SEO campaign against Sleepopolis.  But because it was removed (and rightly so), the Counterclaims do not allege *any* facts linking Casper to the SEO attack.  They merely assert that

(1) Defendants and others were subject to such an attack in 2015 and (2) Casper hired an SEO consulting firm at some point around that time.  These facts are insufficient to support any actionable claim.

Further, even if Defendants' unsupported "belief" that Casper was responsible for the SEO behavior at issue were credited, that does not amount to tortious interference with a prospective economic advantage with Google or a violation of GBL § 349.  As set forth below, the Counterclaims fail to satisfy the elements of either claim and rest on unprecedented theories that, if permitted, would allow nearly any business with a website to sue with impunity, armed with nothing more than a belief that their search priority on Google was negatively impacted. Accordingly, the Counterclaims must be dismissed in their entirety.

### LEGAL STANDARD

On a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept as true the factual allegations of the" Counterclaims.  *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993)).  But the Court should not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]"  *Yanes v. Ocwen Loan Servicing LLC*, No. 13-CV-2343 (JS) (ARL), 2015 WL 631962, at *2 (E.D.N.Y. Feb. 12, 2015) (quotation omitted).  And, while the Counterclaims need not contain "detailed factual allegations," they must offer "more than [] unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation omitted).  This requires more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Id.* (quotation omitted).

Thus, if the Court finds that the Counterclaims rest on "[b]ald contentions, unsupported characterizations, and legal conclusions," it must dismiss them.  *See Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 631 (S.D.N.Y. 2008); *see also Luna v. N.*

*Babylon Teacher's Org.,* 11 F. Supp. 3d 396, 400-401 (E.D.N.Y. 2014) ("[C]onclusory

allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a

motion to dismiss") (citing *Achtman v. Kirby, McInerney & Squire, LLP,* 464 F.3d 328, 337 (2d

Cir. 2006)).

<u>**ARGUMENT**</u>

## I.     THE COUNTERCLAIMS ARE ENTIRELY SPECULATIVE, EVEN THOUGH DEFENDANTS HAD THE BENEFIT OF FULL DISCOVERY FROM CASPER

Defendants allege that they were the victim of an SEO attack that may have benefitted

Casper, among others, and that Casper had retained an SEO consulting firm around that time.

No reasonable inference can be drawn from those two facts alone.  Casper does not dispute that it

hired Terakeet, a reputable SEO consulting firm (although the timing is disputed).  Indeed,

Casper produced voluminous discovery to Defendants concerning Terakeet's consulting services.

Based solely on the fact that Casper hired Terakeet as well as Defendants' allegation that they

experienced a negative SEO attack in mid-2015, Defendants leap to the unsupported and

unreasonable conclusion that Casper *caused* that SEO attack.  That logical leap is the improper

basis for Defendants' claim of tortious interference with a prospective economic advantage and

violation of GBL § 349.

This degree of speculation would likely be fatal to any complaint.  *See* Fed. R. Civ. P.

8(a); *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 72 (2d Cir. 2011) ("The

corollary to Rule 8(a) is that a complaint attacked on a motion to dismiss pursuant to Rule

12(b)(6) will survive so long as the factual allegations—viewed in a light most favorable to the

plaintiff and drawing all reasonable inferences in her favor—are sufficient to raise a right to

relief above the speculative level[.]") (quotation omitted).  In this case, where fact discovery is

largely complete and Casper has produced the very reports created by its "reputation

management firm" (*see* Mar. 29, 2017 Hearing Tr. at 7:10–11, 9:1–4), the outcome is even more certain.  Where "discovery has been completed, [Defendants] should be in a position to assert, if [they] choose[] to do so, whatever factual allegations are pertinent, without making such assertions on the basis of 'information and belief.'"  *Tinlee Enters., Inc. v. Aetna Cas. & Sur. Co.*, 834 F. Supp. 605, 610 (E.D.N.Y. 1993); *see also U.S. ex rel. DeCarlo v. Kiewit/AFC Enters., Inc.*, 937 F. Supp. 1039, 1050 (S.D.N.Y. 1996) ("[T]he degree of particularity required" for a pleading "should be determined 'in light of such circumstances as whether the plaintiff has had an opportunity to take discovery of those who may possess knowledge of the pertinent facts.'" (quotation omitted); *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) (same).[4]  This Court need not "decide whether the [Counterclaims] . . . would be sufficient in a case where no discovery has been had, for [Defendants] have had access to full discovery."  *Billard v. Rockwell Int'l Corp.*, 683 F.2d 51, 57 (2d Cir. 1982).  That Defendants rely on conspiratorial conclusions even though they have access to documents showing Casper's SEO practices underscores the baselessness of their accusations.

The exchange between the parties' counsel on April 18, following which Defendants revised their proposed counterclaims to remove the factual allegation linking Casper to the alleged wrongdoing, further highlights the fact that Defendants have no evidence to support their accusations.  Defendants were prudent to remove the accusation that Casper placed over one hundred thousand links to Sleepopolis on "fake" websites, because that statement lacked the evidentiary basis required under the Federal Rules of Civil Procedure.  But, without it, the Counterclaims are nothing more than a suspicion that Casper perpetrated an SEO attack in 2015 because it was allegedly one of the (potentially many) parties that stood to benefit.  Defendants

---

[4] Although *DeCarlo, Billard,* and *Devaney* involved the sufficiency of fraud-based allegations under Rule 9(b), the reasoning behind them applies equally here.

have not "raise[d] a right to relief above the speculative level" and instead offer only "naked

assertions devoid of [] factual enhancement." *Ticheli v. Travelers Ins. Co.*, No. 1:14-CV-00172,

2014 WL 12587066, at *1 (N.D.N.Y. Dec. 23, 2014) (quotation omitted).  This degree of

speculation should not be credited, even under the most liberal pleading standards, and the

Counterclaims must be dismissed.

## II.   DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR TORTIOUS INTERFERENCE WITH A PROSPECTIVE ECONOMIC ADVANTAGE WITH GOOGLE

Even if Defendants had included sufficient factual allegations, they would nevertheless

still fail to allege the elements required to state a claim for tortious interference with a

prospective economic advantage.[5]  This tort is "a difficult one to sustain," with requirements

"'more demanding than those for interference with [the] performance of an existing contract.'"

*PKG Grp., LLC v. Gamma Croma, S.p.A.*, 446 F. Supp. 2d 249, 251 (S.D.N.Y. 2006) (quoting

*Fine v. Dudley D. Doernberg & Co.,* 203 A.D.2d 419, 419, 610 N.Y.S.2d 566 (App. Div. 1994)).

To state this claim under New York law, Defendants must allege that: (1) they had a business

relationship with Google; (2) Casper knew of that relationship and intentionally interfered with

it; (3) Casper acted solely out of malice, or used dishonest, unfair, or improper means; and

(4) Casper's interference caused injury to Defendants' relationship with Google.  *See*, *e.g.*, *Kirch*

*v. Liberty Media Corp.*, 449 F.3d 388, 400 (2d Cir. 2006).  As described below, the claim fails to

allege the requisite elements.

---

[5] Casper assumes that New York law applies to this claim.  To the extent some other state's law arguably applies, such as Arizona, the required elements are substantially the same.  *See*, *e.g.*, *Miller v. Hehlen*, 209 Ariz. 462, 471 (Ct. App. 2005).

A.        **Defendants Have Failed to Allege a Business Relationship with Google**

Defendants' relationship with Google does not constitute a "nonbinding economic relation[ship]" involving ongoing commercial affiliation or the possibility of a contractual relationship. *See Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 189 (2004); *I.R.V. Merch. Corp. v. Jay Ward Prods., Inc.*, 856 F. Supp. 168, 175 (S.D.N.Y. 1994) (tortious interference with a prospective economic advantage claim dismissed where the claimant "failed to identify a prospective contractual relationship between it and any third party").

This relationship must be akin to "a formal, binding contract" in the sense that it involves "the opportunity of selling or buying . . . chattels or services, and any other relations leading to potentially profitable contracts." *Hannex Corp. v. GMI, Inc.*, 140 F.3d 194, 205 (2d Cir. 1998) (quoting Restatement (Second) of Torts § 766B cmt. c)); *see also Sterling Interiors Grp., Inc. v. Haworth, Inc.*, No. 94 CIV. 9216 (CSH), 1996 WL 426379, at *25 (S.D.N.Y. July 30, 1996) ("The cause of action for interference with prospective business dealings . . . is designed to address situations . . . in which there was an ongoing business relationship between the plaintiff and a third party, but no existing contractual arrangement."); *Henneberry v. Sumitomo Corp. of Am.*, 415 F. Supp. 2d 423, 468 (S.D.N.Y. 2006) (the business relationship must be "*existing* or *continuing . . . at the time of* defendants' tortious interference") (emphasis in original). Alternatively, Defendants may allege that there was "reasonable expectancy" of a formal contract with the third party at the time of the tortfeasor's alleged interference. *See Sterling Interiors Grp., Inc.*, 1996 WL 426379, at *25.

Defendants have no such business relationship with Google.[6]  They do not even *allege* a cognizable prospective business relationship with Google.  The basis for Defendants' purported

---

[6] To the extent Defendants attempt to argue that their prospective business relationship was with consumers at large, the law is clear that "customers at large are far too general to constitute a specific third party" for purposes of a tortious interference claim.  *Dessert Beauty, Inc. v. Fox*,

"prospective business relationship" with Google is that Sleepopolis is one of the millions (if not

billions) of websites on the internet, on which Google operates a search engine.  Defendants do

not allege that they have actually spoken with anyone at Google regarding any business

transaction—ever.  Nor do they suggest that they were in the process of negotiating a contract

with Google.  They allege instead that "a higher and more prominent listing in the search results .

. . would lead to increased consumer traffic and the possibility of greater affiliate revenues."

(Counterclaims ¶ 43.)  But that is true for every website that earns revenues through its viewers

(either by actual commercial transactions or by selling advertisement space).  It also does not

create any business relationship between Defendants and Google.  Defendants are simply

capitalizing on a service that Google provides freely and openly to everyone in the world.

Allowing Defendants to satisfy the "business relationship" requirement solely because

they have a website would mean that every business with a website would have an actionable

prospective business relationship with Google for purposes of a tortious interference claim.[7]  One

could only imagine that Google—which would necessarily become involved in this case were

the claim to survive—would be shocked to learn that it has an actionable business relationship

with Defendants.  The notion that Defendants had a business relationship with Google, therefore,

defies common sense and the tortious interference claim should be dismissed on this basis.  *See*

*Bank of Montreal v. Optionable, Inc.*, No. 09 CIV. 7557 (GBD), 2012 WL 3686294, at *4, n.3

(S.D.N.Y. Aug. 24, 2012) (dismissing counterclaim for tortious interference with prospective

---

568 F. Supp. 2d 416, 429 (S.D.N.Y. 2008), *aff'd*, 329 F. App'x 333 (2d Cir. 2009) (quotation
omitted).  *See also Gen. Motors Corp. v. Dealmaker, LLC*, No. 07-CV-141, 2007 WL 2454208,
at *9 (N.D.N.Y. Aug. 23, 2007) (dismissing tortious interference with prospective business
relationship in part because claimant failed to show the first element and noting that "the public
and customers at large are far too general to constitute a specific third party").

[7] And any website that came under an anonymous SEO attack could assert a tortious interference
claim against a party on suspicion alone, without any evidence tying that party to the attack.

business advantage that "fail[ed] to identify a [] specific client relationship" that was interfered with); *see also PKG Grp., LLC,* 446 F. Supp. at 251 (noting that tortious interference with a prospective economic interest is a "difficult" tort to sustain).

> **B.      Defendants Have Failed to Allege that Casper Acted Solely Out of Malice, or Used Dishonest, Unfair, or Improper Means**

"[A]s a general rule," to satisfy this element of the tort, "the defendant's conduct must amount to a crime or an independent tort." *Carvel Corp.*, 3 N.Y.3d at 190.  Moreover, under New York law, interference with a claimant's business relationship with a third party by itself is not sufficiently culpable conduct if the alleged tortfeasor acted out of "normal economic self-interest." *Id.*[8]

Casper's counsel is unaware of any opinion addressing whether negative SEO practices constitute the kind of "egregious wrongdoing that might support a tortious interference claim in the absence of [] an independently unlawful act or evil motive." *Carvel Corp.*, N.Y.3d at 189. Defendants thus ask this Court to take the unprecedented step of decreeing negative SEO practices unlawful.  *See Masefield AG v. Colonial Oil Indus*., No. 05 CIV. 2231 (PKL), 2006 WL 346178, at *8 (S.D.N.Y. Feb. 15, 2006).  ("[C]onduct that is not criminal or tortious will generally be 'lawful' and thus insufficiently 'culpable' to create liability for interference with prospective contracts or other non-binding economic relations.") (quoting *Carvel Corp*., 3 N.Y.3d 182 at 190).

The Court should reject Defendants' unprecedented interpretation because none of the hallmarks of "dishonest, unfair, or improper means," are present here.  Courts have found that

---

[8] Stated differently, the conduct need not be "criminal or independently tortious" if it were carried out "for the *sole purpose* of inflicting intentional harm on plaintiffs" and with no goal of promoting the actor's economic self-interest.  *Carvel Corp.*, N.Y.3d at 190 (quotation omitted) (emphasis added).

"wrongful means include physical violence, fraud, misrepresentation, civil suits, criminal prosecutions and some degree of economic pressure." *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 214-15 (2d Cir. 2002). SEO practices do not involve any physical violence or economic pressure. Nor do they involve harassment or fraud.

That some may frown upon negative SEO practices does not render them "wrongful conduct" under the exacting standard of this tort. *See, e.g. id*. at 214 (evidence of consulting firm's "slightly less than thorough investigation" and report on the viability of a proposed loan was "far short of the requisite showing of a wrongful purpose."); *Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil Corp.*, No. 08 CIV. 7956 (PKC), 2013 WL 395096, at *16 (S.D.N.Y. Feb. 1, 2013) (encouraging claimant's competitor to "do business with a franchisee other than" the claimant did not rise to the "level of culpable interference required to prevail on a claim for tortious interference with prospective business relations"); *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 170 (S.D.N.Y. 2008), *aff'd*, 321 F. App'x 58 (2d Cir. 2009) ("Pleading the presence of false statements alone is not enough to support a claim for tortious interference after *Carvel*."); *Hassan v. Deutsche Bank A.G.*, 515 F. Supp. 2d 426, 432 (S.D.N.Y. 2007), *aff'd sub nom. Hassan v. Deutsche Bank AG*, 336 F. App'x 21 (2d Cir. 2009) (where defendant "used nothing more than persuasion" to convince industry publication to remove references to claimant, conduct did not rise to the level of wrongful means).

Moreover, negative SEO practices that are carried out solely to "make [oneself] more profitable"—such as to gain internet traffic—are not actionable under New York law. *Carvel Corp.*, 3 N.Y.3d at 190. In *Carvel*, for example, the defendant franchisor induced the customers not to buy Carvel products from the franchisees including by offering coupons that had greater value when used at non-franchised locations like supermarkets. *Id.* at 193. But because these tactics were motivated by the defendant's own economic self-interest, they did not rise to the

14

malicious level required to sustain this tort. *Id.* at 192 (noting that the defendant "did not use wrongful 'economic pressure'," nor did it "drive the franchisees' customers away by physical violence, or lure them by fraud or misrepresentation, or harass them with meritless litigation").

Thus, even if the Court credits Defendants' unfounded accusations, the Counterclaims still fall short of alleging this required element.

### C.    Defendants Fail to Allege that Casper's Interference Caused Any Injury to Its Relationship with Google

Defendants do not allege—as they must—that Casper caused injury to their relationship with Google.[9] *See Radiancy, Inc. v. Viatek Consumer Prod. Grp., Inc.*, 138 F. Supp. 3d 303, 328 (S.D.N.Y. 2014), *as amended* (Apr. 1, 2014) ("Absent allegations that [defendant's] conduct caused the deterioration of the business relationship between [plaintiff] and [the third party], [plaintiff's] claim for tortious interference fails.").

To the extent Defendants allege that they were injured through the diversion of an unspecified number of potential customers (Counterclaims ¶ 43), this theory fails because the alleged injury must be "to the relationship" with the third party, here, Google. *See Kirch*, 449 F.3d at 400. Defendants "relationship" with Google, however, is still intact. Defendants still operate their website and still appear on Google search results. There is no allegation that Google made Defendants any promises that Sleepopolis was required to appear in any specified position on Google search results—if at all. Indeed, to highlight the absurdity of this claim, Google is presumably free to modify its "proprietary and highly confidential algorithm" (Counterclaims ¶ 28) as it sees fit with whatever consequences that may bring to Defendants.

---

[9] Defendants impermissibly rely on threadbare recitals, such as that Casper's "wrongful conduct . . . ha[d] a direct and adverse effect on Hales' prospective relationship with Google" (Counterclaims ¶ 45) and that Defendants "suffered damages as a result of Casper's . . . interference . . . ." (*Id.* ¶ 47.)

Because there is no requirement that Sleepopolis appear in any particular location on Google search results as part of its alleged "business relationship" with Defendants, the fact that Defendants were allegedly demoted temporarily under the application of Google's proprietary algorithm does not constitute an injury to Defendants' relationship with Google sufficient to support a claim for tortious interference.[10]  Defendants' claim should therefore be dismissed for this additional reason.

## III.   DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR VIOLATION OF NEW YORK'S GENERAL BUSINESS LAW § 349

### A.    Defendants Fail to Allege the Factual Detail Required for a GBL § 349 Claim

As previously discussed, Defendants' GBL § 349 claim (like their tortious interference claim) is built on conclusory theories and unreasonable inferences without evidentiary basis and should be dismissed.  *See*, *e.g.*, *Gottlieb Dev. LLC*, 590 F. Supp. 2d at 637 (dismissing claim under GBL § 349 because claimant "ha[d] not furnished anything more than conclusory and speculative allegations" about the alleged deception); *Weaver v. Chrysler Corp.,* 172 F.R.D. 96, 100 (S.D.N.Y. 1997) (dismissing claim under GBL § 349 in part because the deceptive practice was plead entirely on information and belief and lacked specificity); *Tinlee Enterprises, Inc.*, 834 F. Supp. at 610 (dismissing claim under GBL § 349 in part because "the most significant contentions made by [plaintiff, with respect to the § 349 claim] are alleged on the basis of 'information and belief'").

Defendants repeatedly label Casper's alleged conduct as "deceptive" (*see*, *e.g.*, Counterclaim ¶¶ 51–53) and assert in conclusory fashion that "Casper's deceptive acts are likely to mislead a reasonable consumer acting reasonably under the circumstances." (*Id.* ¶ 52.)

---

[10] Moreover, Defendants acknowledge any purported drop in Google rankings was "temporar[y]," and quickly cured by the creation of a "disavow" list that included the allegedly untrustworthy links.  (*Id.* ¶ 40.)

Putting aside Defendants' rhetoric, Defendants do not allege any *facts* showing that Casper

engaged in any deceptive act.  Defendants speculate that Casper was behind the SEO attack, but

those unfounded accusations—without factual support—do not suffice under Rule 12(b)(6) to

state a § 349 claim.  *See Woods v. Maytag Co.*, No. 10-CV-0559 (ADS) (WDW), 2010 WL

4314313, at \*15–16 (E.D.N.Y. Nov. 2, 2010) ("Courts routinely dismiss claims under GBL

§ 349 where the allegations are insufficiently specific to establish a deceptive practice.");

*Horowitz v. Stryker Corp.,* 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (holding that Plaintiff

failed to state a claim under GBL § 349 by "fail[ing] to identify any 'material;' 'deceptive acts'

engaged in by the defendant").

   Further, as with the tortious interference claim, this claim relies on an unprecedented

legal theory that, if adopted by this Court, would open floodgates to new claims by websites that

are subject to anonymous SEO activity.  Defendants urge this Court to create a new body of law

regarding SEO practices, including setting the precedent that experiencing an SEO attack

alone—even without knowledge of who caused it—creates an actionable claim for a violation of

GBL § 349 against any entity that could possibly have benefitted from such an attack.

   **B.**  **Defendants Fail to Allege that Casper Engaged in Consumer-Oriented, Materially Misleading or Deceptive Conduct**

   Even accepting Defendants' conclusory and baseless allegations as true, they still do not

state a § 349 claim because SEO tactics do not constitute consumer-oriented, materially

misleading or deceptive conduct under § 349.  *See Gottlieb Dev. LLC*, 590 F. Supp. 2d at 636

("The typical violation contemplated by the statute [GBL § 349] involves an individual

consumer who falls victim to misrepresentations made by a seller of consumer goods usually by

way of false and misleading advertising."); *see also Oswego Laborers' Local 214 Pension Fund

v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995) (requiring materially misleading, consumer-

oriented conduct to state a claim).  SEO practices may be "sharp-elbowed" but they are not

deceptive to *consumers*.  *See Ascentive, LLC v. Opinion Corp.,* 842 F. Supp. 2d 450, 462, 469

(E.D.N.Y. 2011) (discussing SEO practices in the context of consumer confusion under the

Lanham Act and noting that such practices do not involve any "trick or misleading or confusion

as far as the consumer is concerned").  Accordingly, Defendants' § 349 claim must be dismissed.

## **<u>CONCLUSION</u>**

For the reasons set forth above, Casper respectfully requests that the Court grant its

motion to dismiss the Counterclaims with prejudice.

Dated: New York, New York
      May 19, 2017

                FRANKFURT KURNIT KLEIN & SELZ, P.C.

                By:____/s/ Craig B. Whitney_____
                    Craig B. Whitney

                Caren L. Decter
                Lily Landsman-Roos
                488 Madison Avenue
                New York, New York 10022
                Tel.:  (212) 980-0120
                Fax:  (212) 593-9175
                cwhitney@fkks.com
                cdecter@fkks.com
                llandsmanroos@fkks.com

                *Attorneys for Plaintiff Casper Sleep, Inc.*